UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Hill Holiday Connors Cosmopulos, Inc., d/b/a Erwin-Penland, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C/A No.: 6:08-cv-03980-GRA |
| Jeffrey Greenfield and 1st Approach, LLC, | ) ) ) ) | **ORDER** |
| Defendants, and Third-Party Plaintiffs, | ) ) ) ) | (Written Opinion) |
| v. | ) ) | |
| Cellco Partnership d/b/a Verizon Wireless, and Joseph A. Erwin | ) ) ) | |
| Third-Party Defendants. | ) ) | |

This matter comes before the Court upon a number of motions filed by Defendants/Third-Party Plaintiffs Jeffrey Greenfield and 1st Approach, LLC ("Defendants") against Plaintiff Erwin-Penland ("Plaintiff") and Third-Party Defendant Verizon Wireless ("Verizon"). Specifically, Defendants have filed the following five motions:

- Motion for a Protective Order Regarding the Deposition of Prof. Oliver Wood ("Protective Order"), filed on January 20, 2010, at Dkt. No. 86;

- Motion to Compel Plaintiff to Comply with Defendants' Fourth Request for Production of Documents ("Motion to Compel Production"), filed on January 18, 2010, at Dkt. No. 84;

- Motion to Take Additional Depositions, Modify Scheduling Order, and Require Responses to Interrogatories and Requests for Production ("Discovery Motion"), filed on December 29, 2009, at Dkt. No. 80;

- Motion to Compel Verizon to Respond to Supplemental Interrogatories ("Verizon Motion"), filed on December 8, 2009, at Dkt. No. 76; and

- Motion to Withdraw Verizon Motion and Discovery Motion as to Verizon only ("Motion to Withdraw"), filed on January 22, 2010, at Dkt. No. 87.

For the reasons discussed herein, the Protective Order is GRANTED IN PART, the Motion to Compel Production is GRANTED, the Discovery Motion is DENIED, the Verizon Motion is DENIED as moot, and the Motion to Withdraw is GRANTED.

## **Background**

Plaintiff is an advertising and marketing agency based in Greenville, South Carolina. Defendants run a national marketing firm, with a principal place of business located in New Hampshire.

This case began in state court on September 12, 2008, when Plaintiff filed for declaratory judgment against Defendants seeking the following: a declaration that Defendants have no contractual, trademark, copyright, or other rights in Plaintiff's current project, "How Sweet the Sound," being undertaken by Plaintiff on behalf of its client Verizon; a declaration that Defendants have no contractual, trademark, copyright, or other rights in any other work done by Plaintiff at any time; and a declaration that Plaintiff is not obligated to pay Defendants any damages. Defendants filed a counterclaim on November 30, 2008, seeking money damages and various other forms of relief against Plaintiff because Defendants allege they

helped develop certain projects with Plaintiff. Defendants removed the case to federal court on February 14, 2009.

The central dispute in this case involves a marketing campaign called "How Sweet the Sound," formerly known as the "Amazing Grace" campaign. Although the "How Sweet the Sound" campaign was initially pitched as a potential reality television show involving church choirs, it has now become a successful series of local church choir events held in cities across the country. Plaintiff claims that although Defendants assisted in pitching the initial reality televison show concept to Verizon and another client, Defendants' participation in the campaign was limited to two pitches, Defendants did not help develop the campaign, and Defendants have no rights in the "How Sweet the Sound Campaign." Defendants, however, claim they used their own trade secrets to develop the campaign in collaboration with Plaintiff, and that Plaintiff promised Defendants a "50/50 split" if Plaintiff landed Verizon as a client, which it ultimately did.

Under the current scheduling order, which was the third scheduling order entered in this case, discovery was to be completed by December 31, 2009.

## **Standard of Review**

The Fourth Circuit has clearly delineated its position regarding a district court's ability to implement and enforce discovery parameters. "[A] district court has wide latitude in controlling discovery and . . . its rulings will not be overturned absent a clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679,

682 (4th Cir. 1986) (citations omitted). Further, "[t]he latitude given the district court extends as well to the manner in which it orders the course and scope of discovery." *Id.* (citations omitted).

## Discussion

As an initial matter, this Court must address the conduct of the attorneys on both sides of this litigation. Since discovery began in this case, the lawyers have behaved in an increasingly unprofessional manner. The documents filed in this case are rife with rudeness, juvenile bickering and allegations of stonewalling.

The following excerpt from a long series of emails between Mr. P. Jeffrey North, attorney for Defendants, and Mr. Neil T. Smith, attorney for Plaintiff, showcases the behavior at issue:

> North: "Do you just make this stuff up, Neil? . . . Is that what I said or is that what you want to hear? . . . If you are not willing to [schedule a witness's deposition], let me know . . . and you can explain it to the judge."

> Smith: "Make stuff up? Like you made up the right to put off this deposition until you feel you are good and ready? . . . So who is making stuff up, Jeff?"

(Defs.' Protective Order, Ex. E.)

This Court will not tolerate such childish dribble. If this highly unprofessional conduct continues, the Court will impose sanctions on the guilty parties. With this in mind, the Court now turns to the motions at issue.

A.   Protective Order

Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c). The Protective Order relates to the deposition of Prof. Oliver Wood. Professor Wood is the Defendants' economic expert who will testify regarding Defendants' damages. Defendants ask this Court to declare Prof. Wood's December 23, 2009 deposition notice void, to strike Prof. Wood's December 29, 2009 deposition transcript, and to enlarge the time frame for taking Prof. Wood's deposition. The story of Prof. Wood's deposition is a textbook illustration of uncivilized discovery practice.

In spite of numerous attempts to schedule Prof. Wood for a deposition, Defendants did not make Prof. Wood available. In fact, at one point Defendants wrote to Plaintiff "that Dr. Wood is not my puppet[,] I cannot snap my fingers and make him appear in response to your command . . . . Dr. Wood has a very busy teaching, consulting and litigation schedule, and if you (or anyone) want his testimony, you will have to work with Dr. Wood to get it on his terms." (Defs.' Protective Order, Ex. C at 2.) On December 23, 2009, after Defendants were still unable to provide firm dates on which to depose Prof. Wood, Plaintiff issued a deposition notice that Prof. Wood's deposition would commence at 9 a.m. on December 29, 2009. (*Id.*, Ex. A at 2.) Plaintiff then emailed Defendants that day and said that if Defendants were not willing to schedule a deposition before January 12, 2010, Plaintiff would move ahead with the deposition as scheduled. (*Id.*, Ex. E at 2.)

Defendants replied that Prof. Wood would be unavailable and they would try to get a firm date as soon as possible. (*Id*.) Approximately one week later, on January 4, 2010, Defendants offered available dates for Prof. Wood beginning in late January. (*Id*., Ex. D at 3-4.) However, Plaintiff had already held Prof. Wood's deposition on December 29, 2009, and noted in the deposition record that Prof. Wood failed to attend. (*Id*., Ex. B at 2-8.) Plaintiff claimed it had no choice but to move forward with Prof. Wood's deposition in order to comply with the scheduling order of the case. (*Id*., Ex. D at 3-4.)

Under the Federal Rules, this Court has the authority to protect a party from annoyance or undue burden. *See* Fed. R. Civ. P. 26(c)(1). This includes the power to alter or set discovery parameters. In this case, an order of protection is warranted.

First, the Federal Rules require a party to give reasonable written notice of an oral deposition. *See* Fed. R. Civ. P. 30(b)(1). Although there is no hard rule on what constitutes a reasonable amount of notice, the six-day notice in this case was patently unreasonable. Of the five days between when the deposition was noticed, and when the deposition occurred, four of those days were Christmas Eve, Christmas Day, Saturday, and Sunday. *See, e.g.*, William W. Schwarzer, et al., *California Practice Guide, Federal Civil Procedure Before Trial* ¶ 11:360 (The Rutter Group 1998) ("What is 'reasonable' depends on the circumstances of the case, but at least 10 days' notice is customarily expected.").

Plaintiff's argument that it was trying to comport with the discovery deadline is without merit. The scheduling order allows Plaintiff and Defendants, with the consent of all counsel, to conduct discovery beyond the December 31, 2009 deadline. (Am. Scheduling Order at 3, ¶ 7.) Plaintiff had numerous conversations with Defendants about scheduling the deposition in early January, and Defendants ultimately agreed to a January date, albeit in late January. (Defs.' Protective Order, Ex. D at 3-4, Ex. E at 2.) It appears that Plaintiff scheduled Dr. Wood for a Christmas deposition in an effort to force Defendants to set a date in early January. (*See* Pl.'s.' Resp. to Protective Order at 2-3.)

Further, Plaintiff's argument that Defendants repeatedly failed to produce Prof. Wood is similarly unavailing. Although this Court agrees that Defendants were extremely dilatory in making Prof. Wood available, one party's poor conduct does not entitle the other party to react in kind. However, this Court would like to instruct Defendants that although Prof. Wood is not their "puppet," he is *their expert witness* and the onus is on Defendants to work with Prof. Wood to ensure his availability in this litigation.

Therefore, this Court will grant Defendants' Protective Order in part. The December 23, 2009 deposition notice of Prof. Wood is vacated. However, Defendants will make Prof. Wood available on or before February 23, 2010, for a deposition at a time and location agreed upon between Plaintiff's counsel and

Defendants' counsel.[1] Failure to make Prof. Wood available could result in his testimony being barred at trial. All other requests in the Protective Order are denied.

B.   Motion to Compel Production

Defendants sent Plaintiff several requests for production on November 30, 2009. The requests seek a number of documents from Plaintiff, including information relating to the "How Sweet the Sound" campaign, public relations material, and financial records. (Defs.' Mot. to Compel Produc., Ex. A at 3-9.) Plaintiff argues that Defendants' Motion violates the scheduling order, which requires that discovery requests be made far enough in advance so that the opposing party can respond by the discovery deadline. (Am. Scheduling Order at 3, ¶ 7.)

The Federal Rules require a party to respond within thirty days of a request for production. *See* Fed. R. Civ. P. 34(b)(2)(A). Accordingly, in order for Plaintiff to have had until December 31, 2009, to send a response, Defendants must have sent a request by December 1, 2009.[2] Plaintiff argues that because it had an extra three days to respond under Rule 6(d), its responses to the November 30, 2009 discovery

---

[1] To be clear, this Court is not requiring Plaintiff to take Prof. Wood's deposition. (*See* Pl.'s.' Resp. to Protective Order at 2.)

[2] Defendants also sent additional requests for production on December 4, 2009. (*See* Defs.' Mot. to Compel Produc., Ex. C at 3.) Defendants do not appear to be asking this Court to compel responses to that discovery. Nonetheless, this Court points out that the December 4, 2009 requests for production are time-barred under the scheduling order.

were due after the close of the discovery period set out in the scheduling order. *See* Fed. R. Civ. P. 6(d).

The Court finds this argument unconvincing. First, the scheduling order required a party to be able to respond by the "time provided under the applicable rule . . . ." (Am. Scheduling Order at 3, ¶ 7.) Here, the applicable rule afforded thirty days to respond. *See* Fed. R. Civ. P. 34(b)(2)(A). Additionally, courts from other circuits have held that production requests must be served thirty days before the deadline in a discovery order. *Thomas v. Pacificorp*, 324 F3d 1176, 1177 (10th Cir. 2003) ("The Federal Rules of Civil Procedure allow parties thirty days to respond to requests for production. Therefore, requests must be served at least thirty days prior to a completion of discovery deadline.").

This Court will require Plaintiff to answer Defendants' November 30, 2009 requests for production by February 23, 2010. *See* Fed. R. Civ. P. 34(b)(2)(A) (allowing a court to order a response in fewer than thirty days).

C.  Discovery Motion

Defendants' Discovery Motion asks this Court to allow Defendants to take additional depositions, modify the scheduling order, and expand the number of interrogatories. (Defs.' Discovery Mot. at 1.) Defendants filed this Motion only two days before discovery was scheduled to be completed in this case.

This Court has discretion to expand discovery, which includes allowing for additional depositions and interrogatories. *See* Fed. R. of Civ. P. 26(b)(2)(A), 34(a)(2)(I). However, an expansion is unwarranted in this case.

Defendants have had an ample opportunity to conduct discovery. They have known about this deadline for months. Additionally, Defendants have served numerous discovery requests in this case. In arguing for expanded discovery, Defendants simply renew arguments they made before this Court in November. The Court ordered then that these arguments were untimely. (*See* Order Denying Mot. to Compel, Dkt. No. 73.)

The current scheduling order has been amended twice in this case. On September 1, 2009, this Court denied a request for a third amendment, which would have resulted in the fourth scheduling order in this action. (*See* Order Denying Mot. to Am. Scheduling Order, Dkt. No. 60.) This Court has made abundantly clear that December 31, 2009, was the final discovery deadline in this case. Given that the Court's rulings on Defendants' other motions will inherently cause the discovery in this case to extend into late February, this Court will not tolerate any further delays. Nine months of discovery is more than enough.

D.  Verizon Motion and Motion to Withdraw

Although Defendants initially filed a motion to compel against Verizon, (*see* Verizon Mot. at 1), they now ask this Court to withdraw that motion (*see* Mot. to Withdraw). Additionally, Defendants ask this Court to withdraw its Discovery

Motion as to Verizon only. This Court agrees with Defendants that granting the Motion to Withdraw is in the best interest of judicial economy in this case. This Court will grant the Motion to Withdraw and deny the Verizon Motion as moot.

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion for a Protective Order Regarding the Deposition of Prof. Oliver Wood (Dkt. No. 86) is GRANTED to following extent:

   (i) the December 23, 2009 deposition notice of Prof. Wood is VACATED;

   (ii) Defendants will make Prof. Wood available on or before Tuesday, February 23, 2010, for a deposition at a time and location agreed upon between Plaintiff's counsel and Defendants' counsel; and

   (iii) All other requests in Defendants' Motion for a Protective Order are DENIED.

(2) Defendants' Motion to Compel Plaintiff to Comply with Defendants' Fourth Request for Production of Documents (Dkt. No. 84) is GRANTED. Plaintiff will answer Defendants' November 30, 2009 requests for production by February 23, 2010.

(3) Defendants' Motion to Take Additional Depositions, Modify Scheduling Order, and Require Responses to Interrogatories and Requests for Production (Dkt. No. 80) is DENIED.

(4) Defendants' Motion to Compel Verizon to Respond to Supplemental Interrogatories (Dkt. No. 76) is DENIED as moot.

(5) Defendants' Motion to Withdraw (Dkt. No. 87) is GRANTED.

**IT IS SO ORDERED.**

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

February 9, 2010
Anderson, South Carolina