Page 310

1  A. Not exactly.
2  Q. I was asking you about what the basis is --
3 you know, how has Verizon misappropriated your trade
4 secrets. Correct?
5  A. Yes.
6  Q. And you said: Because they knew I was
7 there.
8  A. Yes.
9  Q. Do you remember that?
10  A. Yes.
11  Q. And by that, you mean: They knew I was on
12 the pitch, right?
13  A. What I meant was, I was there at the pitch.
14 I was involved. And when you go and you give
15 something, you give an entire program to a company,
16 and you say to them, Hey, this is it, here is how it
17 operates, and they come back to you and they say,
18 pare it down a little bit, and you pare it down a
19 little bit, and then they go off and they do it as
20 their own, that's just not right.
21      MS. SHARTON: Move to strike the last
22 answer.
23  Q. What I was asking you about is: What did
24 you mean by "they knew I was there"? They knew you
25 were at the pitch, correct?

Page 311

1  A. Yes. They saw my name in the deck. They
2 saw that it was copywritten to me. They saw that
3 the concept was a branded entertainment concept
4 between Erwin-Penland and myself. They were aware
5 that the idea was mine or both of ours. They were
6 aware of that.
7  Q. Anything else?
8  A. Not that I can recall at this time.
9  Q. It is your testimony that they saw that
10 this was -- that the deck was copyrighted to you; is
11 that your testimony?
12  A. Yes.
13  Q. I'm looking at Exhibit 11, which we have
14 already determined was the presentation given on
15 April 26, 2006, to Verizon; is that correct?
16  A. Yes.
17  Q. Where does it say on the deck that the deck
18 is copyrighted to either you or 1st Approach?
19      It says, copyright by Erwin-Penland/1st
20 Approach, correct?
21  A. April 26, 2006. The last page.
22  Q. At the end?
23  A. Yes.
24  Q. The deck itself is copyrighted, correct?
25  A. Yes.

Page 312

1  Q. That's what that means?
2  A. Yes.
3  Q. The slides are copyrighted?
4  A. The slides and the concept are copywritten,
5 yes.
6  Q. That is your testimony?
7  A. Yes.
8  Q. And that's the only basis for your
9 misappropriation claim against Verizon, correct?
10  A. Just the copyright on the deck?
11  Q. Yes.
12  A. No.
13  Q. Okay. What else?
14  A. During the presentation, I was introduced
15 as this separate agency. I was introduced around to
16 people there. They saw e-mails going back and
17 forth.
18      I was told by Erwin-Penland that Verizon --
19 that the people they were working with at Verizon
20 wanted us, meaning EP and 1st Approach, to be the
21 people to carry this through.
22      They see, in the deck, in another spot, it
23 shows that, you know, this was created by the two of
24 us working together. And I was brought in as the
25 person who would be able to execute all that.

Page 313

1  Q. Is it your understanding that you can
2 copyright a concept?
3      MR. JEKEL: Objection to the form. Calls
4 for a legal conclusion.
5  A. I'm not a lawyer.
6  Q. I'm asking for your understanding.
7  A. My understanding --
8      MR. JEKEL: Object to the form of the
9 question.
10  Q. Is it your understanding that you can
11 copyright a concept?
12  A. I think you can copyright a concept.
13  Q. All right. Have you ever been in an ad
14 agency pitch prior to the one at Verizon on
15 April 26, 2006?
16  A. Describe what you mean by "an ad agency
17 pitch."
18  Q. Have you ever gone in an ad agency pitch?
19      You know what an ad agency is, right?
20  A. Yes.
21  Q. You know what a pitch is, right?
22  A. Yes.
23  Q. Have you ever been on one before?
24  A. With another agency?
25  Q. Yes.