IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| HILL HOLLIDAY CONNORS COSMOPULOS, INC. d\b\a ERWIN-PENLAND,<br>    Plaintiff,<br><br>vs.<br><br>JEFFREY GREENFIELD and 1st APPROACH, LLC,<br>    Defendants, and<br>      Third-Party Plaintiffs,<br><br>vs.<br><br>CELLCO PARTNERSHIP d\b\a VERIZON WIRELESS, and JOSEPH A. ERWIN,<br>    Third-Party Defendants. | Case Number: 6:08-CV-3980-GRA |

Defendants' Memorandum in Opposition to
Plaintiff's Motion to Strike Dr. Wood's Supplemental Reports

Comes now the Defendants and Third-Party Plaintiffs, 1st Approach LLC and Jeffrey Greenfield (collectively referred to hereinafter as "Greenfield"), and in opposition to the Plaintiff's Motion to Strike Dr. Wood's Supplemental Reports (hereinafter "Supplemental Disclosures") would state unto the Court that the Supplemental Disclosures were filed by Greenfield pursuant to the explicit terms of Federal Rule of Civil Procedure ("FRCP") No. 26(e)(1)((B)(2); and that the Supplemental Disclosures are properly viewed as supplements rather than new reports. While refusing to depose Dr. Wood on February 23, 2010 as provided for in the Court's Order of February 9, 2010, Plaintiff now seeks to strike Dr. Wood's

Supplemental Disclosures which merely expand upon the opinions that Dr. Wood expressed in his report dated September 29, 2009.

Dr. Oliver G. Wood, Jr., a renowned economist, was retained by Greenfield to assess the economic harm caused to him as a result of the misappropriation of his interest in How Sweet the Sound and other wrongs by Erwin Penland (hereinafter "EP") and Verizon Wireless (hereinafter "VZW"). On September 29, 2009, Dr. Wood produced an expert report entitled Preliminary Evaluation of the Economic Loss to Mr. Jeffrey Greenfield and 1st Approach LLC (hereinafter the "Report"). The Report found that Greenfield suffered a substantial economic loss proximately caused by the wrongful acts and omissions of Erwin-Penland, Joseph A. Erwin and Verizon Wireless including, but not, limited to, the following three categories of economic loss:

1. The lost profits owed to them as the creator or co-creator and owner of How Sweet the Sound, including but not limited to a share of all revenue and / or other benefits received by, or credited to, Erwin-Penland from or by Verizon, in anyway related to the How Sweet the Sound campaign, and including but not limited to a share of all revenue and / or other benefits received by Verizon in anyway related to How Sweet the Sound;

2. The lost profits owed to them in, providing a full range of production services to the How Sweet the Sound campaign.

3. The lost profits which they would have earned from new business generated from the positive publicity about them for creating and producing How Sweet the Sound, an Effie Award-winning national campaign.

In the concluding paragraph of the Report, Dr. Wood stated that the "…above-shown lost profit calculations depend in large part upon documents in the possession of Erwin-Penland and Verizon Wireless which have not yet been produced to Jeffrey Greenfield and 1st Approach LLC (or were produced to them just yesterday, September 28th), e.g. contracts between Erwin-Penland and Verizon Wireless (and other vendors), market analysis, revenue reports, wireless subscriber values, cost allocations, profit sharing formula, production costs and fees etc. Upon receipt and review of the relevant documents, the undersigned will promptly supplement this report."

Since the date of the Report, many thousands of pages of documents have been produced in discovery, numerous expert reports have been filed, and a number of depositions have been taken by all parties.

On February 17, 2010, Dr. Wood issued a supplement to the Report entitled Supplement to Preliminary Evaluation Report of the Economic Loss to Mr. Jeffrey Greenfield and 1st Approach LLC in which he calculated how EP and Greenfield, together, would have benefitted from the commercial exploitation of How Sweet the Sound if it had been placed in a separate entity jointly owned by EP and Greenfield, as the parties had agreed it would be. In arriving at an economic loss number approaching nearly $2 million, Dr. Wood used numbers derived from documents which EP and VZW claim are confidential such as VZW budget estimates for How Sweet the Sound, and contracts between VZW and EP. As to VZW, and using several sets of data, Dr. Wood made alternate calculations based upon two separate methodologies, concluding as follows: a) that the potential revenue opportunity for VZW from its commercial exploitation of How Sweet the Sound may be as much as $505,728,868 in After-Cost Revenue; and 2) that VZW may realize as much as $157,574,322, in After-Cost Economic Value.

From the foregoing, it is clear that Dr. Wood's Supplemental Disclosures are squarely within the scope of the opinions re: economic loss which he expressed in the Report produced on September 29, 2009. The Supplemental Disclosures are simply not 'new' opinions as claimed by EP.

In claiming that the Supplemental Disclosures are "untimely," counsel for EP appears to have overlooked FRCP 26(e)(1)((B)(2) which states as follows:

> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this

information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. (Underscoring Supplied).

The Scheduling Order in this case states as follows: "No later than March 15, 2010, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures." Thus, under FRCP 26(e)(1)((B)(2) and the Scheduling Order, it is clear that Dr. Wood's Supplemental Disclosures could have been filed at any time up to and including March 15th. To avoid the kind of bad faith "ambush" of which EP's Counsel has accused Greenfield in his Motion to Strike, and even though not obligated to do so under the FRCP cited above, Greenfield provided the Supplemental Disclosures to EP's counsel on February 17th, well in advance of February 23rd, the date when Dr. Wood was to be deposed according to the Court's Order. This was done so that EP's counsel would be able to depose Dr. Wood as to his several opinions expressed in the Report and in the Supplemental Disclosures. With EP now in possession of Dr. Wood's Report and the Supplemental Disclosures, Greenfield would welcome EP and VZW's deposition of Dr. Wood as contemplated in the Court's Order of February 9, 2010.

**The Law Office of P. Jeffrey North LLC**

**By:   P. Jeffrey North, Esq.**

**Attorney Identification Number 9885**
**PO Box 7525**
**Hilton Head SC 29938**
**Phone (843) 341-5200**
**Fax    (888) 487-7624**
**Email  attorney@pjnorth.com**
**March 2, 2010**
**Hilton Head SC**

## CERTIFICATE OF SERVICE

This is to certify that on March 2, 2010, the undersigned, attorney for the Defendants, served the <u>Defendants' Memorandum in Opposition to Plaintiff's Motion to Strike Dr. Wood's Supplemental Reports</u> upon all counsel of record by email and through the ECF.

        The Law Office of P. Jeffrey North LLC

**By:** _____
    P. Jeffrey North, Esq.
    PO Box 7525
    Hilton Head Island, SC 29938
    Phone  (843) 341-5200
    Fax     (888) 487-7624
    Email  attorney@pjnorth.com

**March 2, 2010**
**Hilton Head Island, SC**