UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Hill Holiday Connors Cosmopulos, Inc., d/b/a Erwin-Penland, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C/A No.: 6:08-cv-03980-GRA |
| Jeffrey Greenfield and 1st Approach, LLC, | ) ) ) | |
| Defendants, and Third-Party Plaintiffs, | ) ) ) ) | **ORDER** (Written Opinion) |
| v. | ) ) | |
| Cellco Partnership d/b/a Verizon Wireless, and Joseph A. Erwin | ) ) ) | |
| Third-Party Defendants. | ) ) | |

    This matter comes before the Court upon the following motions to seal:

- Plaintiff Erwin-Penland's ("Plaintiff's") Motion to Seal, filed on March 1, 2010, at Dkt. No. 97. Plaintiff seeks to seal fifteen exhibits totaling approximately 200 pages and selected portions of it's memorandum in support of summary judgment.

- Third-Party Defendant Verizon Wireless' ("Verizon's") Motion to Seal, filed on March 1, 2010, at Dkt. No. 99. Verizon seeks to seal thirteen exhibits totaling more than 300 pages.

- Defendants/Third-Party Plaintiffs Jeffrey Greenfield's and 1st Approach, LLC's ("Defendants'") Motion to Seal, filed on March 1, 2010, at Dkt. No. 101. Defendants seek to seal fifty-three exhibits totaling nearly 800 pages.

For the reasons discussed herein, Plaintiff's Motion to Seal is DENIED, Verizon's Motion to Seal is DENIED, and Defendants' Motion to Seal is DENIED.

**Background**

Plaintiff is an advertising and marketing agency based in Greenville, South Carolina. Defendants run a national marketing firm, with a principal place of business located in New Hampshire.

This case began in state court on September 12, 2008, when Plaintiff filed for declaratory judgment against Defendants seeking the following: a declaration that Defendants have no contractual, trademark, copyright, or other rights in Plaintiff's current project, "How Sweet the Sound," being undertaken by Plaintiff on behalf of its client Verizon; a declaration that Defendants have no contractual, trademark, copyright, or other rights in any other work done by Plaintiff at any time; and a declaration that Plaintiff is not obligated to pay Defendants any damages. Defendants filed a counterclaim on November 30, 2008, seeking money damages and various other forms of relief against Plaintiff because Defendants allege they helped develop certain projects with Plaintiff. Defendants removed the case to federal court on February 14, 2009.

The central dispute in this case involves a marketing campaign called "How Sweet the Sound," formerly known as the "Amazing Grace" campaign. Although the "How Sweet the Sound" campaign was initially pitched as a potential reality television show involving church choirs, it has now become a successful series of

local church choir events held in cities across the country. Plaintiff claims that although Defendants assisted in pitching the initial reality televison show concept to Verizon and another client, Defendants' participation in the campaign was limited to two pitches, Defendants did not help develop the campaign, and Defendants have no rights in the "How Sweet the Sound Campaign." Defendants, however, claim they used their own trade secrets to develop the campaign in collaboration with Plaintiff, and that Plaintiff promised Defendants a "50/50 split" if Plaintiff landed Verizon as a client, which it ultimately did.

The Parties entered into a Protective Order approved by the Court on August 7, 2009. (Protective Order, Dkt. No. 55.) Under this Protective Order, the Parties agreed not to disclose confidential information, certain financial information, or other sensitive information. (*Id*. at 2, ¶ 2.) However, the Protective Order expressly required that Parties wishing to incorporate protected documents in a court filing comply with the applicable rules governing the sealing of documents. (*Id*. at 7, ¶ 9.) On February 9, 2010, this Court denied a motion to amend the Protective Order that would have eliminated the requirement of following the sealing process under the applicable rules.

On March 1, 2010, the deadline for filing dispositive motions in this case, each party filed for summary judgment. Also on March 1, 2010, each party filed a motion to place certain exhibits to their respective motions under seal.

**Standard of Review**

As the Fourth Circuit has explained, when discovery materials are used as "part of a dispositive motion, they los[e] their status as being 'raw fruits of discovery,' and that discovery, 'which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court.'" *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) (quoting *Rushford v. New Yorker Magazine*, *Inc.*, 846 F.2d 249, 252 (4th Cir. 1988)). Accordingly, as opposed to the more lenient common law right of access, a "rigorous First Amendment standard" applies to protect the public's right to access these documents. *Id*.

Under the First Amendment standard, there must be a showing that the denial of access is necessitated by a compelling government interest or, perhaps, justified by a non-governmental interest that also implicates such "higher values." *Press-Enter. Co. v. Super. Ct. of Cal. for the County of Riverside*, 464 U.S. 501, 510 (1984); *Rushford*, 846 F.2d at 253. In either case, the Court would also have to determine whether sealing the exhibits at issue would constitute a "narrowly tailored" solution designed "to serve that interest." *Press-Enter*. *Co.*, 464 U.S. at 510.

One limited type of non-governmental interest that can proscribe the public's right of access is where such access could provide a 'source[ ] of business information that might harm a litigant's competitive standing.'" *Nixon v. Warner*

*Commc'n, Inc.*, 435 U.S. 589, 597 (1978). "Regardless of whether the source of the asserted countervailing interest is governmental or non-governmental, '[t]he burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position.'" *Level 3 Comm'ns., LLC v. Limelight Networks, Inc.* 611 F. Supp .2d 572, 583 (E.D. Va. 2009). *See also Carr v. Forbes, Inc.*, 121 F. Supp. 2d 485, 485 (D.S.C. 2000).

The Fourth Circuit has provided a procedure for district courts to weigh the competing interests of the party who wishes to file documents under seal and the public who has a First Amendment right of access. *See Va. Dep't of State Police,* 386 F.3d at 576; *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir.1984). First, the district court must give the public adequate notice and a reasonable opportunity to be heard, which can be accomplished by docketing the motion as a motion to seal. *Va. Dep't of State Police,* 386 F.3d at 576; *see also* Local Rule 5.03(D), D.S.C.. Second, the Court must consider less drastic alternatives to sealing. *Id*. Third, if the Court decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. *Id*.

## Discussion

Although the Parties filed separate Motions to Seal, each motion has basic commonalities. Each motion merely lists the documents to be sealed after generically stating that the documents are covered by a protective order in the case

and that the documents contain confidential business information. (*See* Pl.'s Mot. to Seal at 3-5; Defs.' Mot. to Seal at 2-4; Verizon's Mot. to Seal at 2-5.) The Parties here fail to carry their burden to show that sealing is necessary to protect a compelling interest and that sealing is the least restrictive alternative.

A.      Motions to Seal are Defective Under Local Rules

Local Rule 5.03 requires a party wishing to seal documents to, among other things, "state the reasons why sealing is necessary [and] . . . explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection . . . ." Local Rule 5.03(A), D.S.C.. "Failure to obtain . . . approval as required by this Rule shall result in summary denial of any request or attempt to seal filed documents." *Id*. The Parties here merely made blanket statements that a collective total of approximately 1,000 pages should be sealed. No Party explained for each specific document why sealing was required or why less drastic alternatives would not afford adequate protection.

To the extent this Court looks to the Parties' generic explanation of why the documents should be sealed, these cursory explanations also fail to show the public's First Amendment right to access should be trammeled. The Parties spend a great deal of time noting that the documents at issue are covered by a protective order in the case. However, under this Court's local rules, "[p]rotective agreements or orders which address the filing of documents with the Court shall, however, require compliance with Local Civil Rule 5.03 [which governs the sealing documents]

. . . ." Local Rule 26.08, D.S.C.. Additionally, the Fourth Circuit has made clear that granting a protective order to facilitate pre-trial discovery does not justify proscribing the First Amendment right of access to judicial documents. *Rushford*, 846 F.2d at 254.

B.     Mere Claim that Documents Contain Confidential Information is Insufficient

The Parties' generic statements that the information contains confidential business records, even if true, is similarly unavailing. That a document is confidential to a particular business is not a justification for the extraordinary act of sealing documents protected by the First Amendment's right to access. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 948 F.2d 128, 130-31 (4th Cir. 1991). This is especially the case where the Parties are seeking to seal almost 1,000 pages with little-to-no specific and individual explanation as to why each document should be sealed. As a district court in the Fourth Circuit recently explained,

> none of the [confidentiality] interests advanced . . . are 'appropriate' to be weighed in deciding whether to seal materials to which the public would otherwise have a right of access guaranteed by the First Amendment. In other words, [a party's] asserted private confidentiality interests, however legitimate, simply do not figure in the Court's analysis where the First Amendment guarantee is implicated. Consequently, although this Court, as previously noted, certainly does not seek to make light of [the party's] interest in the confidentiality of its business records, the utter lack of any asserted compelling governmental or private interest in sealing the exhibits at issue here effectively ends the First Amendment analysis, and leads inevitably to the conclusion that . . . the instant motion would have to be denied and the documents would have to remain in the public record in this case.

*Level 3 Comm'ns., LLC,* 611 F. Supp .2d at 590 (internal citations omitted).

C.   Inadequate Showing that Documents Contain Trade Secrets

The Parties only potential argument that could justify sealing the documents at issue is that they contain trade secrets as defined by South Carolina law. However, this argument fails on several levels. First, the Parties do not properly argue that the documents at issue contain trade secrets. In its Motion to Seal, Verizon never asserts that any of its documents contain trade secrets. (Verizon's Mot. to Seal at 1-8.) Plaintiff, who produced most of the documents at issue in these motions, never actually claims in its Motion to Seal that the documents contain trade secrets. (Pl.'s Mot. to Seal at 1-11.) Plaintiff merely states that the documents contain proprietary information without explaining which documents contain what type of proprietary information. Defendants' Motion to Seal does claim the attached documents contain trade secrets, but it never explains which specific documents contain what type of trade secrets. (Defs.' Mot. to Seal at 1-16.) The Motion simply regurgitates boilerplate language for each document.

Second, even if the documents contained trade secrets, the there is still no absolute right to protect trade secrets from disclosure. *See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("[C]ourts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure.") Given that the Parties have not articulated a specific need to protect each document, this Court

must find the compelling First Amendment right to access weighs in favor of disclosure.

Third, out of an abundance of caution this Court reviewed the approximately 1,000 pages sent by the Parties and finds nothing that appears so proprietary or confidential as to justify sealing these records. For example, in Plaintiff's Motion to Seal, Plaintiff seeks to seal certain portions of its memorandum in support of summary judgment. However, the portions it seeks to redact contain information like Defendants' work hours and salary, and some of the specific logistical aspects of the How Sweet the Sound choir competition and proposed reality television show. Ironically, Plaintiff's expert reports, which Plaintiff also seeks to file under seal, go on at length to discuss how ordinary and common these concepts are.

The same is true of the documents attached to Verizon and Defendants' Motions to Compel. Several of these documents are the same as those submitted by Plaintiff. Additionally, these documents consist of mere business correspondence, contracts between numerous parties, and business ideas that the experts in this case concede are routine in the advertising and marketing industry.

### Conclusion

Given the Parties' failure to show any compelling reason why each document at issue should be sealed and their failure to show why less drastic means are unavailable for each document, this Court concludes the Parties have failed to overcome the right of access guaranteed by the First Amendment.

"What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records . . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27-29 (1994). The Parties here have utterly failed to show such compelling justification.

IT IS THEREFORE ORDERED that Plaintiff Erwin-Penland's Motion to Seal is DENIED.

IT IS FURTHER ORDERED that Third-Party Defendant Verizon Wireless' Motion to Seal is DENIED.

IT IS FURTHER ORDERED that Defendants/Third-Party Plaintiffs Jeffrey Greenfield's and 1st Approach, LLC's Motion to Seal is DENIED.

IT IS FURTHER ORDERED that the Parties shall file all documents relevant to their summary judgment motions with this Court by 5 p.m., Wednesday, March 10, 2010. The deadline to respond to the summary judgment motions remains the same.

**IT IS SO ORDERED.**

*[signature]*
G. Ross Anderson, Jr.
Senior United States District Judge

March 8, 2010
Anderson, South Carolina