IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| HILL HOLLIDAY CONNORS PENLAND,<br>    Plaintiff, | )<br>)<br>)<br>) | Case Number: 6:08-CV-3980-GRA |
| vs. | )<br>) | |
| JEFFREY GREENFIELD and<br>1st APPROACH, LLC,<br>    Defendants, and<br>    Third-Party Plaintiffs, | )<br>)<br>)<br>)<br>) | DEFENDANT/THIRD PARTY<br>PLAINTIFF'S 1ST APPROACH<br>MOTION FOR SUMMARY JUDGMENT<br>AND MEMORANDUM IN SUPPORT |
| vs. | )<br>) | |
| CELLCO PARTNERSHIP d\b\a<br>VERIZON WIRELESS, and<br>JOSEPH A. ERWIN,<br>    Third-Party Defendants. | )<br>)<br>)<br>) | |

   COMES NOW the Defendant/Third Party Plaintiff 1st Approach/Greenfield (hereinafter Greenfield) and moves this Court pursuant to Rule 56 of the Federal Rules of Civil Procedures for an order granting Greenfield's Motion for Summary Judgment on Greenfield's claims of unjust enrichment against Third Party Defendants Hill Holliday Connors Cosmupulos, Inc. d/b/a Erwin-Penland (hereinafter E-P) and Cellco Parnership d/b/a Verizon Wireless. (hereinafter Verizon)

   Greenfield is entitled to summary judgment on the claims of unjust enrichment. To sustain a motion for summary judgment, the moving party must show no issues of material fact exist for a given claim, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Greenfield's motion for summary judgment in this matter is predicated on the equitable remedy unjust enrichment as plead and interpreted under South Carolina law. See Dkt. #6, Eleventh Cause of Action ¶ 108-116; and Dkt. 21, Twelfth Cause of Action ¶ 111-119.

1

In order to recover for unjust enrichment Greenfield must show, "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." Sauner v. Pub. Serv. Auth. of S. C., 354 S.C. 397, 581 S.E.2d 161, 167 (S.C. 2003). If the claim is proven, restitution should be awarded. Id.

Based on the pleadings and discovery already set forth in this matter, Greenfield can show the absence of dispute to any material facts relating to the claim for unjust enrichment. Greenfield requests this Court grant the Motion for summary judgment against Hill Holliday, E-P and Verizon

## I. NO ISSUES OF MATERIAL FACT EXISTS ON THE UNJUST ENRICHEMENT CLAIMS

A successful claim for unjust enrichment, and subsequent award of restitution damages, requires a party to assert three elements: (1) the party seeking restitution conferred a "non-gratuitous benefit" on another; (2) the non-moving party appreciated value from the benefit, and; (3) equity requires the non-moving party to compensate the moving party for the retained benefit. Sauner v. Pub. Serv. Auth. of S. C., 354 S.C. 397, 581 S.E.2d 161, 167 (S.C. 2003).

### a. GREENFIELD CONFERRED A "NON-GRATUITOUS BENEFIT" ON E-P AND VERIZON.

Unjust enrichment requires one party to receive a benefit which would be inequitable to retain without compensation, and that the benefit be given "non-gratuitously." Id. A benefit is considered "non-gratuitous" when a party conveys the benefit with the expectation of compensation. See Niggel Assoc., Inc. v. Polo's of N. Myrtle Beach, Inc., 296 S.C. 530, 533 (S.C. 1988). In Niggel, the South Carolina Appellate Court held a benefit should be deemed

2

"non-gratuitous" if it was conferred, "(1) at the [non-moving party]'s request or (2) in circumstances where the [moving party] reasonably relies on the [non-moving party] to pay for the benefit and the [non-moving party] understands or ought to understand that the [moving party] expects compensation and looks to [the non-moving party] for payment." Id. This articulation provides the framework for evaluating the gratuitous or non-gratuitous nature of a benefit.

Greenfield was approached to assist E-P in the fall of 2005 after Joe Erwin was present when Greenfield presented at a panel discussion at a trade association meeting in California (Exh. 1-Greenfield Depo. & Exh. 42- Bosworth Depo. Pg. 65) The parties engaged in initial discussions and determined that Greenfield would be best suited for assisting in aspects of a presentation E-P was going to make to a new potential client Captain D's (Exh. 42- Bosworth Depo) Greenfield expected compensation and/or creative credit for his contributions. (Exh. 1-Greenfield Depo. Pg. 203; & Exh. 40). E-P had no prior relationship with Captain D's in the fall of 2005, but did have an existing relationship as a regional marketing/advertising agency for Verizon Wireless (Exh. 3). Jeff Greenfield worked with E-P members on an idea that was referred to as "Amazing Grace". Amazing Grace was designed to be a national gospel choir competition where events would be held regionally, with regional winners competing in a choir competition finale. (See Exhibit 4 - Amazing Grace deck E-P Bates No. EP000124; EP226852-EP226856). Mr. Greenfield was involved at the very initial stages of the concept generation and helped develop and refine the idea for the search for America's Best Gospel Choir that became "How Sweet the Sound". (See Exh. 40)

As explained by Bill Reynolds, (E-P's media director at the time) the concept of the gospel choir competition developed during a phone conference with Joe Erwin, Jeff Greenfield,

3

and Shannon Wilbanks. Reynolds described that the gospel choir competition idea evolved during the conference call. (Exh. 5 - Reynolds depo. pgs 29-30, 38). Bill Reynolds recalled an additional conference call related to the Captain D's gospel choir concept. The second call included additional refinement of the idea and that Greenfield was involved. (Exh. 5 - Reynolds depo. Pg. 30). At some point during the process the name of the concept was changed from Amazing Grace to "How Sweet the Sound". (Exh. 5- Reynolds depo. Pg. 31-32).

In early November of 2005 there are numerous exchanges of information and ideas on the "How Sweet the Sound" concept for Captain D's presentation. Greenfield is assisting in creating "How Sweet the Sound" presentation for Captain D's (Exh 6). Mr. Greenfield and E-P viewed "How Sweet the Sound" event as a branded entertainment possibility that would allow potential sponsors of the event to gain inroads with the African-American community. (Exh. 1-Greenfield Depo. at 112-113; Exh. 36, Rossi Depo. Pg. 71). The information that Greenfield was sharing with E-P is varied and significant. Greenfield shared with E-P, 1st Approach's proprietary presentation on Internet Buzz Campaign. (Exh.8- Bates no. E-P00035-E-P00056, November 2005 email accompanying internet buzz campaign). The campaign includes internet material strategies and social networking approaches. (Exh. 8) Greenfield also shared ideas on branded entertainment financing tax models. (Exh. 9-E-P depo. exhibit 54, Bates no. EP000142-EP152.) Jeff Greenfield put together the Amazing Grace presentation for E-P use at the Captain D's presentation. This was requested by Shannon Wilbanks on November 4, 2005 and sent the same day. (Exh. 10 - E-P deposition exhibit 58, Bates no. E-P000124 and E-P226852 – E-P226856). Greenfield's ideas focused on local participation with regional events and a finale while television was a core concept it was not the only core concept. It is anticipated that Erwin-Penland and Verizon Wireless will seek to categorize Greenfield as being involved in only an

4

"Episodic Realty TV show". Greenfield believes the facts do not support this, and such categorization is nothing more than a post hoc categorization. Greenfield believes he was always the productive person on the team.

The presentation to Captain D's was not successful, but in early December 2005 E-P again enlisted the assistance of Greenfield in refining the presentation of "How Sweet the Sound" to an existing E-P client, Verizon Wireless. (Exh. 40) Greenfield again expected compensation and/or creative credit for his contributions. (Exh. 1 at pg. 203; Exh. 40)

At this time, E-P was a regional marketing advertising agency of Verizon Wireless. The agency relationship had existed for some time and goes back to at least 2001. (Exh. 3- E-P AEO exhibit 1, Bates no. EP235629-EP235668, 2001 Agreement between Verizon and E-P with 2003 Addendum). In and around December of 2005, E-P had preliminary discussions with Verizon Wireless about making a "How Sweet the Sound" presentation to the National Marketing Director at Verizon. On December 29, 2005 a preliminary presentation deck is submitted to Verizon by E-P. (See Exhibit 12 - E-P 67, Bates no. EP000837-EP000850, Verizon Wireless Branded Entertainment Opportunity December 29, 2005). Greenfield's involvement in preparing the presentation deck from December to April was continuous throughout the process and varied in its application (See Exhibit 40; and Exhibit 13 - E-P deposition, exhibit 66). At the heart of Greenfield's idea was that the regional gospel choir events have a large local community aspect that can be exploited through his techniques of "Buzz Marketing". Greenfield promoted the concept that while the pitch center on a television show, whether "How Sweet the Sound" made it on television was irrelevant. (See Exhibit 14 - E-P deposition exhibit 33). Greenfield explained, the putting on all the varied local events would allow Verizon to use the grass roots nature of the production in the African American community Verizon was looking to penetrate.

5

(Exh. 15- E-P deposition exhibit 29 – Greenfield/1st Approach Bates no. 000318-000321).

On February 13, 2006 Greenfield had earlier echoed the local community aspect. Notes from a February 13, 2006 meeting made by Shannon Wilbanks and distributed to attendees via e-mail indicate that Greenfield shared with his partners the belief that the television aspects were secondary to the community events. The local events gave Verizon the opportunity to build community relationships. (Exh. 16 - E-P deposition exhibit 23, Bates no. Greenfield/1st Approach 000413- E-P 000415).

The preliminary discussions with Verizon Wireless on "How Sweet the Sound" were received well by Verizon. In February of 2006 John Stratton from Verizon Wireless indicates to E-P that Verizon Wireless was impressed with the "How Sweet the Sound" idea and wanted a full presentation. (Exh. 17 - E-P Deposition exhibit 70, Bates no. E-P000874 – E-P000875, February 9, 2006 email).

After revisions and editing, the final presentation deck on "How Sweet the Sound" was ready. The presentation team included Joe Erwin, Alan Bosworth, Shannon Wilbanks, William Reynolds, all from E-P and Jeff Greenfield. The April 26, 2006 presentation deck reflected the collaborative effort and ideas. (Exh. 18 - E-P deposition exhibit 22, Bates no. E-P000295 - E-P000330, April 25, 2006 email with attachment; and Exhibit 41 E-P deposition exhibit 85, Bates no. E-P000884 - E-P000895). The April 26, 2006 deck includes significant admissions that establish Greenfield's non-gratuitous contribution. The deck includes a specific slide that noted the concept was collaborative and 1st Approach was a creator. (Exh. 18 - E-P000303)

The presentation deck "How Sweet the Sound" a Branded Entertainment concept for Verizon Wireless presentation deck was copyrighted. Interestingly, Allen Bosworth, E-P Executive Officer testified that E-P never copyrighted anything with a vendor. (Exh. 40-

6

Bosworth Depo). Clearly the work with Greenfield and E-P evidenced a special relationship. The copyright specifically included 1st Approach. (Exh. 18 - E-P000330). Indeed, at the April 26, 2006 presentation Mr. Greenfield was given a topic to present to Verizon Wireless. (Exh. 42 Bosworth depo. Pg. 77) The Greenfield presentation focused on how production of the competition for potential television could be used to exploit local marketing opportunities. A review of the presentation deck makes this crystal clear. (Exh. 41 - E-P000887, pages 19 and 20 of the presentation deck).

The presentation for "How Sweet the Sound" to Verizon on April 26, 2006 was at some levels a success. As Bill Reynolds explained, Verizon was greatly impressed very much by the fact E-P and 1st Approach created a concept, outside of E-Ps current scope of work for Verizon Wireless and was complete in the approach. (Exh. 5 - Reynolds depo. pg 56). However, Verizon made clear, after the presentation, that it had no interest in pursuing production of an episodic reality TV show at that time. (Exh. 19 - Joe Erwin depo. Pgs. 374, 377 and 378). Verizon requested that the concept of "How Sweet the Sound" be revised and re-presented. Jeff Greenfield continued to be involved and provide input on how the concept could be refined to exploit the choir competition's local grass-root nature and scale back television. (Exh. 40; and Exh. 1 Greenfield depo pg. 172)

The work of the team resulted in a revised presentation deck of May 19, 2006. (Exh. 43 - E-P deposition exhibit 16). The deck was distributed among the group on June 19, 2006 and indicates Greenfield contributed. The May/June 2006 presentation deck is significant in several respects. First, the scale of the television is dramatically reduced and includes, for an entire years worth of competitive events, only one hour of television. The television aspect of the program is minimal and contemplated either a one-hour documentary or one hour live television

event. (Exh. 43 - Deck, pg 17). Additionally, the May/June deck still included a copyright of "How Sweet the Sound", a Branded Entertainment Concept for Verizon Wireless to both E-P and 1st Approach. (Exh 43 at pg. 19 ).

After a very successful test market in Memphis in 2007, Verizon Wireless did in fact accept and sponsor "How Sweet the Sound" events. (Exh. 40) In 2008, Verizon Wireless sponsored 12 events, 11 regional and one final. The total production costs for 2008 were tens of millions of dollars. (Exh. 21 at **VZW000219615). In 2009 Verizon Wireless again conducted "How Sweet the Sound" events in the same cities as 2008 with similar production costs.

Interestingly enough, over the course of the "How Sweet the Sound" branded entertainment sponsorship events, there have been two one-hour television events. Such facts make it necessary for E-P and Verizon to attempt to paint Greenfield as the "Episodic Reality TV Show". These words however do not appear as a description of Greenfield's work in any of the over 500,000 produced in this case. The first on Black Entertainment Television in May 2009 was a one-hour documentary piece detailing the filming of the 2007 Memphis event on the Gospel Music Channel and the second, a one-hour television special Thanksgiving Weekend 2009, an airing of the final "How Sweet the Sound" competition on the Gospel Music Channel. (Exh. 45 & 46) Greenfield was not provided the opportunity by E-P to do any TV production. This is true even though E-P was discussing documentary type television aspects of "How Sweet the Sound" with Verizon in August of 2006 (Exh. 11 -Depo. Exh. 103 8/23/06) Verizon Wireless has indicated it will continue and expand the events for 2010 adding new cities. (Exh. 24-VZW 2010 Activation Plan) Indeed, the 2010 activation plan includes an entire section on social web-based marketing as well as plans to continue the events in 2011. Social web based

8

internet strategies was included in 1st Approach's Internet Buzz Campaign distributed to E-P in November, 2005. (Exh. 24 - AEOVZW 000266389-000266469 and Exh. 8).

After June 19, 2006 the communication between E-P and Greenfield became sporadic. Despite Greenfield's several requests for updates on discussions between E-P and Verizon the replies were evasive and in some cases not made at all. (Exh. 40) In June 2006, Greenfield is told "How Sweet the Sound" is a 2007 first quarter initiative. (Exh. 44) At one point, in November of 2006 Greenfield requests an update from E-P on the discussions with Verizon and notes that if Verizon has turned it down, Greenfield would like to take the presentation on "How Sweet the Sound" to one of his clients. (Exh. 48 - E-P deposition exhibit 40, Greenfield 1st Approach 000075-000076). At no point did E-P suggest to Greenfield that it is moving forward without him or that he should not consider the program one that Greenfield can take to clients of his. (Exh. 42 Bosworth Depo. Pgs. 142-143 Rather E-P enticed Greenfield in believing that he was protected. (Exh. 48) At the same time, beginning in the summer and fall of 2006, E-P is in large discussions with Verizon about moving the project forward. (Exh. 11 Depo. Exh. 103) At this same time EP is elevated to a national advertising agency for Verizon (Exh. 42 Bosworth Depo. Pgs. 158-159)

Greenfield has always evidenced an intent to be compensated and to be considered an equal creative developer for "How Sweet the Sound". This is evidenced throughout the communications between the parties. Initially in November 2005, when the Captain D's presentation was completed and Joe Erwin was discussing the potential of continual work with Mr. Greenfield, it was requested Greenfield come to Greenville to meet the E-P team, (See Exh. 26) Greenfield notes that a day visit and presentation will need to be charged out separately as a fee, but that such fee would be credited back to E-P after a successful pitch to a

client. (Exh. 26- E-P deposition exhibit 65, Greenfield/1st Approach 000423). When the parties were preparing the "How Sweet the Sound" presentation to Verizon, Greenfield provided clear intent that the concept should be structured such that Greenfield, E-P, and Verizon all have an ownership interest. (Exh. 27- E-P Exhibit 36, Greenfield/1st Approach 000202-000206, 000204**). Mr. Greenfield's involvement throughout the process was non-gratuitous.

### b. THE NON-MOVING PARTIES, E-P and VERIZON, RECEIVED A VALUE FOR THE BENEFIT CONFERRED BY GREENFIELD AND 1ST APPROACH.

After a party has shown the conferred benefit was non-gratuitous, it must then prove the non-moving party(ies) received value. Sauner, 354 S.C. 397, 581 (S.C. 2003). Courts have found a benefit of value exists when (1) the benefit is presented to the non-moving party, 66 Am. Jur. (2d) *Restitution and Implied Contracts §4* (1973), and (2) the non-moving party "possessed an appreciation or knowledge of the benefit…" In re Lorazepam & Chorazepate Antitrust Litig., 295 F. Supp. 2d 30, 50 (D.D.C. 2003). The party seeking restitution cannot merely rely on the fact that the non-moving party benefitted, but instead must show the benefit was directed toward the non-moving party. Ellis v. Smith Grading & Paving, Inc., 294 S.C. 470, 475 (1988) (finding, for restitution, it is not enough to show a party to received a benefit, the moving party must have conferred the benefit on the non-moving party).

E-P and Verizon Wireless have seen many benefits. E-P has appreciated Greenfield's involvement and documented after Memphis that Greenfield was responsible for a substantial portion of the "How Sweet the Sound" concept. (Exh. 50, Bates No. EP050532; E-P Depo. Exh. 28.1, Exh. 28.2) The first benefit of E-P is not immediately clear but is significant. As indicated, Verizon Wireless applauded E-P and Jeff Greenfield after the initial presentation for

putting together a unique idea with all elements present. This action impressed the executives at Verizon Wireless so much that in 2007 E-P was elevated from a regional agency to one of Verizon's national ad agencies. This coincided with VZW agreeing to move forward on "How Sweet the Sound" in Memphis. (Exh. 42-Bosworth Depo. Pgs. 158-159) The effect of E-P becoming a national agent for Verizon has included a jump in gross revenues to E-P from Verizon. The revenues go from an annual seven-figure contract to an annual eight-figure contract. The increases in the overall revenues to E-P has resulted in an increased profit to E-P. (Exh. 28 AEO3-VZW000000020-VZW000000098; Exh. 28.1 AEO4 EP031678-E-P031686; Exh. 28.2AEO 7 ; Exh. 28.3 AEO - E-P147520-E-P147528).

In addition, E-P has been conferred the benefit of being one of the agents involved in production of the 2008 and 2009 "How Sweet the Sound" events. This contract work is in addition to the annual agency contract and also includes profits.

The next benefit conferred on both E-P and Verizon relates to the 2007 Memphis program and the Effie Award. Executives from Verizon and E-P decided that the "How Sweet the Sound" event in Memphis was such a success that it should be considered for an "Effie" Award. The Effie Award is an award presented by the American Marketing Association that recognizes excellence in advertising and marketing campaigns. (See Exh. 51- AMA EFFIE descriptions) Verizon and E-P submitted an Effie application for the Memphis event (Exh. 5 Reynolds depo. pgs. 18-19). The presentation made by Verizon indicated a return from the event in Memphis. Specifically the Effie presentation touted the "How Sweet the Sound" Memphis event provided significant gross ads (new business) in the Tennessee African-American communities. (Exh. 29 - Duvall Depo. Exhibit 9 and 10) Indeed, E-P markets its gold Effie win

for the "How Sweet the Sound" Memphis event on the first page of its current website. (Exh. 30 – E-P Website printout).

The success to Verizon of the 2008 and 2009 events have been similar. As was indicated after the 2008 event, the public perception of Verizon Wireless as a corporation and potential wireless provider to the African-American community had increased. (Exh. 5 - Bill Reynolds deposition testimony page 8-10). Verizon sponsoring the events has internally been viewed as successful. (Exh. 36- L. Rossi Depo. pgs. 27, 122, and Exh. 29 R. Duvall Depo. pgs 30 and 33.) In addition to a better public perception Verizon also obtained gross ads (new customers) in the African-American community. (Exh. 31- 2008 Metrics document VZW000006945-000006969). Indeed these benefits continued after the 2009 events. The benefits were discussed at Verizon's 2010 "How Sweet the Sound" Planning Meeting of November 16, 2009. (Exh. 32- AEO VZW000266362 – VZW000266388). The 2009 "How Sweet the Sound" events have had a positive impact on both the public perception and cellular service purchasing options for Verizon in the targeted African American communities. (Exh. 32 - AEOVZW 000266376-part of 2010 Planning Meeting and Exh. 29 R. Duvall Depo. pg. 37) Greenfield's experts have examined the economic impact that "How Sweet the Sound" has had on both E-P and Verizon. Both Oliver Wood and Larry Namer have indicated the substantial economic gains to both Verizon Wireless and E-P. (Exh. 34 Wood Report; and Exh. 39 Larry Namer report). Indeed Verizon has stated based on its history with "How Sweet the Sound" that for 2010 the business objective includes at least three percent (3%) gross ads/gains in the African American communities. (Exh. 24- AEO document VZW000266391). In sum, the benefits conferred on E-P and Verizon include: national recognition by peers that "How Sweet the Sound" was a unique and powerful marketing event; increased public perception of E-P as a national advertising agent; increased public

12

perception of Verizon as a member of the community and supportive of community involvement; as well as conferring significant financial gains on both entities. The benefits conferred to Jeff Greenfield as a result of his involvement in the process have been none. He has not been compensated or provided any creative credit for "How Sweet the Sound". (See Exh. 40) Instead he has been forced into Court by E-P to protect his rights.

### c. IT WOULD BE INEQUITABLE TO ALLOW E-P AND VERIZON TO RETAIN THE BENEFIT OF GREENFIELD'S CONTRIBUTION WITHOUT RESTITUTION.

The third element required for an unjust enrichment claim is a finding that it would be "inequitable for the [non-moving party] to retain the benefit without paying the [moving party] for its value." Sauner, 354 S.C. 397, 581. Here, the Court must simply look to the value conferred and determine if equity would find the need to compensate the moving party for the benefit given to the non-moving party. Metalmeccanica Del Tiberina v. Kelleher, 2005 U.S. App. LEXIS 23946. (Exh. 7). Greenfield has established that he contributed but has not been compensated or given creative credit. Greenfield has also established that the benefits to both E-P and Verizon have been significant. Not only in terms of gross ads, but in terms of public perception of both. At the heart of all of the parties success is "How Sweet the Sound", a grass roots based sponsorship events focused on gospel choir competitions. It has been shown that Greenfield was involved at the very beginning of concept generation and contributed in several aspects of the concept refinement including internet options and other local marketing strategies. Over 25 local events have been conducted, there have been two hours of television, and more to come. Verizon has expended tens of millions of dollars on the event. E-P has 8 figure contracts

with Verizon that began as a result of "How Sweet the Sound" in Memphis. Greenfield has received no creative credit. Greenfield has received no production work on "How Sweet the Sound" Greenfield has been provided nothing. It would be inequitable for E-P and Verizon to be the only entities deriving benefits from the "How Sweet the Sound" presentations. Greenfield has established that he should be compensated for his contributions to the successful events, and recieve creative credit.

## CONCLUSION

Greenfield has established all elements of his unjust enrichment claims against E-P and Verizon. Greenfield's Motion for Summary Judgment on claims of Unjust Enrichment against E-P and Verizon should be granted.

Mt. Pleasant, SC

March 1, 2010.

By: _____
Frederick Jekel, Esq.
Jekel-Doolittle, LLC
P.O. Box 2579
MT. Pleasant, SC 29465
843-654-7700
888-567-1129 (fax)
Fritz@J-DLaw.com