IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| HILL HOLLIDAY CONNORS COSMOPULOS, INC. d/b/a ERWIN-PENLAND, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| JEFFREY GREENFIELD and 1st APPROACH, LLC, | ) ) ) | Case Number: 6:08-CV-3980-GRA |
| Defendants, and Third-Party Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, and JOSEPH A. ERWIN, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM IN RESPONSE TO THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF UNJUST ENRICHMENT**

Third-Party Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), by and through counsel, submits this memorandum in opposition to Third-Party Plaintiff's motion for summary judgment on the claim of unjust enrichment ("Greenfield's Motion") filed by Defendants/Third-Party Plaintiffs 1st Approach, LLC and Jeffrey Greenfield (collectively "Greenfield," or "Defendants"). The undisputed facts support Verizon Wireless' motion for summary judgment on that claim, not Greenfield's.

1

**INTRODUCTION**

In December 2005, Plaintiff Erwin-Penland pitched to its longstanding client Verizon Wireless the idea of a national gospel choir competition modeled on the "American Idol" reality television series. Without Verizon Wireless' knowledge, Erwin-Penland invited Greenfield to an April 2006 pitch of the same concept at Verizon Headquarters. (Verizon Wireless' Motion, Ex. 4, found at Docket No. 100). Greenfield presented at that meeting for less than five minutes, and focused solely on "production of the competition for potential television." (Greenfield's Motion at 7, found at Docket No. 105). "Verizon [Wireless] made clear, after the presentation, that it had no interest in pursuing production of an episodic reality TV show at that time." (Id.). This is Greenfield's entire relationship with Verizon Wireless. Outside of his five minute presentation at the April 2006 pitch Greenfield cannot identify any other contact he has had with Verizon Wireless—not one e-mail, conversation, or transaction.[1]

Yet now, more than three years later, Greenfield asserts that Verizon Wireless has been unjustly enriched by some unspecified, non-gratuitous benefit that he allegedly conferred on Verizon Wireless through the How Sweet the Sound ("HSTS") gospel choir competition. The undisputed evidence, however, clearly supports the opposite conclusion. Verizon Wireless did not induce Greenfield to confer any benefit on it. Verizon Wireless has not had any communications or relationship with Greenfield that would validate his unreasonable belief that he should be compensated for his small—and, from Verizon Wireless' perspective, unsolicited—alleged contribution to the rejected speculative pitch Verizon Wireless received in April 2006. If, as Greenfield claims, he

---

[1] Greenfield likely will point to communications where Verizon Wireless applauded Erwin-Penland for developing a potential concept aimed at penetrating the African American market. Notably, Greenfield is not involved in these communications. **Exs. 1, 2.**

2

worked with Erwin-Penland on the revised gospel choir competition concept that was presented to Verizon Wireless in June 2006, Verizon Wireless has no knowledge of his participation and no knowledge of any relationship between Greenfield and Erwin-Penland.

Nor has Verizon Wireless been unjustly enriched. To the contrary, as Greenfield readily admits, Verizon Wireless has expended tens of millions of dollars on HSTS over the past three years. It has paid Erwin-Penland under contract for executing the HSTS programs, and has paid every other agency that was retained to assist in executing HSTS. Greenfield has contributed nothing to any of the HSTS events, and yet he asserts that he is owed damages for any gross increase in Verizon Wireless subscribers ("gross ads")[2] and any increase in the public perception of Verizon Wireless that he claims resulted from the HSTS programs. Greenfield's claims for damages are inappropriate because: any financial gains from the gross ads that Greenfield would attribute to HSTS are far less than the substantial expenses that Verizon Wireless incurred to produce HSTS; and the South Carolina Supreme Court rejects speculative damage claims such as Greenfield's claims for damages related to an alleged increase in public perception of Verizon Wireless due to HSTS.

## **FACTS**

The undisputed facts in this case are set forth in detail in Verizon Wireless' Motion for Summary Judgment. (Verizon Wireless' Motion at 5–9, found at Docket No. 100). In consideration of the extensive briefing already filed in this action, Verizon Wireless incorporates herein the recitation of facts set forth in its earlier Motion.

---

[2] This figure ignores costs and is not adjusted to reflect customers that cancelled service during the relevant time period ("churn").

3

However, Verizon Wireless must address Greenfield's attempt to prop up his unjust enrichment claim by incorrectly asserting that "Verizon Wireless applauded E-P and Jeff Greenfield after the initial presentation for putting together a unique idea with all elements present." (Greenfield's Motion at 11). In fact, the Verizon Wireless executives who were involved in HSTS have no idea who Greenfield is, except for the fact that he is suing Verizon Wireless. (Deering Dep. at 33:11–34:5, 34:22–35:5, attached hereto as **Ex. 3**; Shafer Dep. at 12:20–13:12, attached hereto as **Ex. 4**; Rossi Dep. at 104:15–20, attached hereto as **Ex. 5**; Duval Dep. at 39:18–23, attached hereto as **Ex. 6**). The initial pitch for a gospel choir competition was in December 2005, and it is undisputed that Greenfield was not involved in this pitch. (Greenfield Dep. at 134:5–18, attached hereto as **Ex. 7**). Assuming that Greenfield is instead referring to the April 2006 pitch, where he spoke for less than five minutes about a televised gospel choir competition based on "American Idol," (id. at 165:11–19); (Greenfield's Motion at 7), Greenfield has admitted that he has no specific recollection of what happened there, (Greenfield Dep. 165:6–166:11; 169:5–7), other than someone from Verizon Wireless possibly stating that the television series portion of the gospel choir competition concept was "not even in the top 500 TV ideas [he/she had] heard this year," (id. at 173:16–19). For their part, the Verizon Wireless executives who attended the April 26 pitch do not even remember that Greenfield was there. (Deering Dep. at 10:1–12:9, 33:11–34:5, 34:22–35:5).

## **ARGUMENT**

To recover for unjust enrichment, one must show "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without

4

paying the plaintiff for its value." Gignilliat v. Gignilliat, Savitz & Bettis, LLP, 684 S.E.2d 756, 764 (S.C. 2009) (citing Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc., 374 S.E.2d 507 (S.C. Ct. App. 1988)). Greenfield cannot prove any of these elements.

**A.**     **Greenfield Did Not Confer a Non-Gratuitous Benefit on Verizon Wireless**

Greenfield must first show that he conferred a non-gratuitous benefit on Verizon Wireless. A benefit is non-gratuitous when it is conferred either "(1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment." Niggel Assocs., Inc., 374 S.E.2d at 509. "It is not enough that the defendant has knowledge of the plaintiff's conduct; he must have induced the plaintiff to confer the benefit." Id.

The undisputed facts show that Verizon Wireless did not request any benefit from Greenfield and neither understood nor ought to have understood that Greenfield expected Verizon Wireless to compensate him in some way. Greenfield cannot point to a single communication where Verizon Wireless requested him to perform any work for it at any time. Nor did Verizon Wireless ask to be pitched the idea of a gospel-choir competition. Erwin-Penland alone pitched that unsolicited idea to Verizon Wireless in December 2005. (Greenfield Dep. at 134:5–18).

To the extent Greenfield may have contributed to the April 2006 pitch of the same idea, Verizon Wireless had no reason to believe that Greenfield expected payment for his contributions. The undisputed evidence demonstrates that Erwin-Penland unilaterally invited Greenfield to attend the pitch; Verizon Wireless neither requested nor was aware

5

of any alleged contribution that Greenfield claims to have made to the pitch. **Ex. 8**. Verizon Wireless has no knowledge of any relationship between Greenfield and Erwin-Penland, has never itself had a business relationship with Greenfield, and has never had or discussed entering into a contract with him. (Greenfield Dep. at 206:19–21; Hughes Dep. at 349:5–11, attached hereto as **Ex. 9**).

As Greenfield admits in his Motion, his portion of the April 2006 pitch was limited to "how production of the competition for potential television could be used to exploit local marketing opportunities." (Greenfield's Motion at 7). Verizon Wireless summarily rejected the television portion of the pitch. (Deering Dep. at 37:19–38:19). Although Erwin-Penland revised the gospel choir competition concept after that pitch, one of the more significant revisions eliminated the television series component that Greenfield presented to Verizon Wireless. **Ex. 10.** The revised deck that Erwin-Penland ultimately sent Verizon Wireless in June 2006 ("June Deck") contains no mention of a television series, no mention of Greenfield, and no reference to any revisions made by Greenfield. Id., **Ex. 11**. Assuming he even made revisions to the pitch and those revisions were incorporated into the June Deck, Greenfield cannot point to a single communication where Verizon Wireless requested that Greenfield perform any such revisions, or any indication that Verizon Wireless knew of his participation in the revisions.

In his Motion, Greenfield cites five documents as evidence of his expressed intent to be compensated. But none of them supports his unjust enrichment claim against Verizon Wireless. Three of the documents relate to a pitch made to Captain D's and have nothing to do with Verizon Wireless. (Greenfield's Motion at 9–10). The other two

6

documents were never presented to Verizon Wireless but were instead exchanged between Greenfield and Erwin-Penland "when [they] were preparing the 'How Sweet the Sound' presentation to Verizon [Wireless]."  (Id. at 10).

Greenfield also points to the Erwin-Penland/1st Approach copyright designation on the April and June Decks and a slide in the April Deck that says, "'How Sweet the Sound' is a local marketing and television concept conceived by Erwin-Penland and 1st Approach as a reality program that taps into the soul of America with a celebration of music and spirituality."  (Id. at 6–8); (Verizon Wireless' Motion, Ex. 5, found at Docket No. 100); **Ex. 11**.  Even if such language gave Verizon Wireless notice of Greenfield's alleged participation in the gospel choir competition concept, "[i]t is not enough that the defendant has knowledge of the plaintiff's conduct; he must have induced the plaintiff to confer the benefit."  Niggel Assocs., Inc., 374 S.E.2d at 509.  Again, the undisputed evidence shows that Verizon Wireless never asked Greenfield to develop or pitch a gospel-choir competition, and never asked him to participate in the execution of any HSTS event.

Under the circumstances, Verizon Wireless had no basis for understanding that Greenfield was expecting some form of compensation for the gospel choir competition concept he claims is his trade secret.  The April 2006 pitch was a speculative pitch and in keeping with industry standards regarding such pitches, Verizon Wireless was neither expected nor required to pay anyone simply for presenting an idea.  (Verizon Wireless' Motion, Ex. 8 at 7–8, found at Docket No. 120); **Ex. 12 at 6–8**.  Verizon Wireless compensated Erwin-Penland only for work that it performed in executing actual HSTS events, not for the gospel choir competition concept on which they were based.

Greenfield's own actions belie his claim that he expected some form of compensation from Verizon Wireless. This dispute arose when Greenfield sent a demand letter regarding HSTS to Erwin-Penland, but not to Verizon Wireless.[3] After Erwin-Penland commenced this declaratory judgment action, Greenfield brought a separate lawsuit in state court against Erwin-Penland alone. Greenfield's first demand of Verizon Wireless came when Greenfield (improperly) served Verizon Wireless with a third-party subpoena in this case seeking documents only. Two months after Verizon Wireless objected to the subpoena and nine months after Erwin-Penland commenced the suit, Greenfield enjoined Verizon Wireless as a third-party defendant and asserted for the first time that Verizon Wireless was unjustly enriched by its alleged misappropriation of Greenfield's gospel choir competition concept.

**B.    Verizon Wireless Did Not Receive Value for Any Alleged Benefit Conferred by Greenfield**

As Greenfield admits, conferring a non-gratuitous benefit on a defendant requires that the defendant "'posses[] an appreciation or knowledge of the benefit.'" (Greenfield's Motion at 10 (quoting In re Lorazepam & Chorazepate Antitrust Litigation, 295 F. Supp. 2d 30, 50 (D.D.C. 2003)). It is undisputed that Greenfield's only contact with Verizon Wireless was the five minute presentation during the April 2006 pitch regarding the television production component of the gospel choir competition. (Greenfield Dep. at 165:11–19); (Greenfield's Motion at 7). Thus, Verizon Wireless could only have

---

[3] Verizon Wireless' Motion, Ex. 16, found at Docket No. 100. In June 2009—that is, almost two months after he brought a third-party action against Verizon Wireless, Greenfield's attorney sent a letter to Verizon Wireless' attorney demanding "proper attribution" of HSTS to Greenfield for the first time. (Greenfield Aff. at 6, found at Docket No. 105).

8

appreciated or known that Greenfield conferred a benefit on it by virtue of his presentation at the April 2006 pitch.

But as Greenfield admits, "Verizon Wireless made clear, after the presentation, that it had no interest in pursuing production of an episodic reality TV show at that time." (Greenfield's Motion at 7).[4]  In fact, Verizon Wireless ultimately adopted and executed a gospel choir competition that was radically different from the one presented at the April 2006 pitch.  Said differently, Verizon Wireless explicitly and immediately rejected the specific "benefit" that Greenfield presented at the April 2006 pitch—that is, the television series—and rejected as well numerous other aspects of that pitch.  Verizon Wireless had no reason to believe that Greenfield was involved in the revised and radically different program that it ultimately executed, and no knowledge of any involvement Greenfield may have had in developing any ideas that may have gone into that program.

Even if Greenfield could show he conferred a known benefit on Verizon Wireless, he cannot demonstrate that this benefit had any value.  The Supreme Court of South Carolina recently held that a claim for unjust enrichment "requires a showing of actual damages resulting from the wrongful retention of benefits . . . by the defendant." Gignilliat, 684 S.E.2d at 764.  Greenfield has not distinguished the claimed "increased public perception of Verizon [Wireless] as a member of the community and supportive of community involvement" due to HSTS, (Greenfield's Motion at 13), from the speculative and impermissible claim of increased professional goodwill rejected outright by the Supreme Court of South Carolina.  Gignilliat, 684 S.E.2d at 764.  Furthermore, while admitting that Verizon Wireless has spent tens of millions of dollars on HSTS,

---

[4] Greenfield also later acknowledged during discussions with Erwin-Penland in 2008 that in the national version of HSTS there was "*[s]till* no component for TV." **Ex. 13** (emphasis added).

9

(Greenfield's Motion at 8), Greenfield has not presented any evidence to establish a link between this expensive program and any alleged benefits to Verizon Wireless, such as an increase in the revenue or profit of Verizon Wireless.[5]  Moreover, Greenfield has presented no credible evidence to contradict the clear testimony indicating that any such benefits are speculative, at best.  (Rossi Dep. at 71:15–72:6; Deering Dep. at 63:16–64:9; Duval Dep. at 31:4–15).

### C.     It Is Not Inequitable for Verizon Wireless to Retain Any Benefit Without Paying Greenfield for Its Value

Verizon Wireless has paid tens of millions of dollars to execute HSTS over the past three years.  It has paid every agency that has performed work on the HSTS events, and only for work done on the events—not for developing ideas related to the program.  Greenfield has not worked on any aspect of the HSTS events.  Yet now he baldly asserts that Verizon Wireless should not be able to retain the benefit of any resulting gross ads or increase in public perception from HSTS.  It is not inequitable for Verizon Wireless to retain any alleged benefits for which it has paid.  In fact, the exact opposite is true.  It would be inequitable for Greenfield to take any alleged benefits from Verizon Wireless based on his fortuitous invitation to the April 2006 pitch without Verizon Wireless' knowledge, brief presentation of a televised reality series gospel choir competition idea that Verizon Wireless soundly rejected, lack of any interaction with Verizon Wireless after the April 2006 pitch, and delay of three years into the execution of HSTS to bring any claims against Verizon Wireless.

---

[5] Greenfield's expert, Oliver Wood, recently supplemented his opinion and Verizon Wireless has not had the opportunity to depose Mr. Wood regarding his opinion.  The evidence will clearly demonstrate that Mr. Wood's opinion is speculative and not based upon any credible evidence.

10

## **CONCLUSION**

Based on the foregoing, Verizon Wireless respectfully requests that the Court deny Third-Party Plaintiff's Motion for Summary Judgment on the claim of unjust enrichment against Verizon Wireless.

This the 18th day of March, 2010.

_____
Robert A. Muckenfuss
McGuireWoods, LLP
100 North Tryon Street, Suite 2900
P. O. Box 31247
Charlotte, NC  28231-1247
T:  704.343.2000
F:  704.343.2300
Email: rmuckenfuss@mcguirewoods.com
Attorneys for Verizon Wireless

## CERTIFICATE OF SERVICE

      This is to certify that I have this day served a copy of the foregoing **MEMORANDUM IN RESPONSE TO THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIM OF UNJUST ENRICHMENT** as indicated below, upon the below named persons:

      (**X**)    Served via CM/ECF e-mail Service only

      (  )    By delivering a copy personally

      (  )    By leaving a copy at the office of such person

      (  )    By telecopying said papers as indicated below

      (  )    By depositing a copy of same in the United States Mail, postage prepaid, addressed as shown below and by electronic mail

| | |
|---|---|
| Brenda R Sharton<br>Neil Thomas Smith \\<br>Goodwin Procter<br>Exchange Place<br>53 State Street<br>Boston , MA 02109<br>617-570-1214<br>Email:bsharton@goodwinprocter.com<br>       nsmith@goodwinprocter.com<br>*Attorneys for Plaintiff* | Bernie W. Ellis<br>Rita McKinney<br>McNair Law Firm<br>P.O. Box 447<br>Greenville, SC 29602<br>Email:<br>bellis@mcnair.net<br>rmckinney@mcnair.net<br>*Attorneys for Plaintiff* |
| Phillip Jeffrey North<br>P Jeffrey North Law Office<br>PO Box 7525<br>Hilton Head , SC 29938<br>843-341-5200<br>Email: attorney@pjnorth.com<br>*Attorney for Jeffrey Greenfield and 1st Approach LLC* | Frederick J. Jekel<br>Paul J. Doolittle<br>Jekel-Doolittle, LLC<br>P.O. Box 2579<br>Mt. Pleasant, SC 29465<br>Email: fritz@j-dlaw.com<br>       paul@j-dlaw.com<br>*Attorney for Jeffrey Greenfield and 1st Approach LLC* |

      This the 18th day of March, 2010.

*[signature]*

_____

Robert A. Muckenfuss