IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| HILL HOLLIDAY CONNORS COSMOPULOS, INC. d/b/a ERWIN-PENLAND,<br>    Plaintiff,<br>vs.<br><br>JEFFREY GREENFIELD and<br>1st APPROACH, LLC,<br>    Defendants, and<br>    Third-Party Plaintiffs,<br>vs.<br><br>CELLCO PARTNERSHIP d/b/a<br>VERIZON WIRELESS, and<br>JOSEPH A. ERWIN,<br>    Third-Party Defendants. | Case Number: 6:08-CV-3980-GRA |

Defendants' Memorandum in Opposition to
Third-Party Defendant Joseph A. Erwin's Motion for Summary Judgment

Comes now the Defendants and Third-Party Plaintiffs, 1st Approach LLC and Jeffrey Greenfield (collectively referred to hereinafter as "Greenfield"), and in opposition to Third-Party Defendant Joseph A. Erwin's (hereinafter "Erwin") Motion for Summary Judgment would state as shown below.

Standard for Grant of Summary Judgment

To prevail on his motion for summary judgment, Erwin must initially show there are no genuine issues of material fact, and that he is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). Greenfield, in response, must set forth specific facts showing that there is a genuine issue for trial." *Id.*; Fed. R. Civ. P. 56(e). If Erwin carries his initial burden under Rule 56(c), Greenfield must show that the record, taken as a whole, provides a rational basis on which

the jury can find EP liable. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

## Summary of the Case

This case is about *"**How Sweet the Sound**"* (also referred to herein as "*HSTS*"), an award-winning, highly successful national marketing campaign being run by VZW, directly, and indirectly, through numerous agencies and agents throughout the land, including EP (hereinafter the "Campaign").[1] Greenfield created the Marketing Campaign and presented it, together with EP, directly to VZW's Chief Marketing Officer, John Stratton, and other VZW senior executives in 2006;[2] and even though EP and VZW have received, and expect to receive, many millions of dollars in additional revenue from the Marketing Campaign,[3] Greenfield has received no compensation for his work of genius, nor has he received any attribution or credit for having created this brilliant Campaign. *HSTS* is a multi-media, branded-entertainment masterpiece involving church choir competitions at numerous venues in selected, metropolitan areas with large populations of increasingly-affluent African Americans. *See* www.howsweetthesound.com. EP and Verizon Wireless believe that the African American demographic group offers an opportunity for VZW to increase the number of its subscribers, and the centerpiece of their strategic plan by which to increase VZW's market share in the African American community is *HSTS*.[4]

In October 2005, when Erwin heard Greenfield speak at a conference in Los Angeles, he quickly realized that EP's creative department lacked the innovative techniques and knowledge

---

[1] **Ex. 1**: Effie 2009 Trophy Winners, at p. 1.
[2] **Ex. 2**: EP/1st Presentation Deck (Apr. 26, 2006), at p. 8, and p. 32 (last page).
[3] **Ex. 3**: VZW estimates $844 million in incremental revenue. VZW000078237 at p. 4.
[4] **Ex. 4**: GlobalHue MCM 2008 Agency Review (Mar. 20, 2009) (VZW000090289-VZW000090296).

that Greenfield had mastered, and in certain areas, pioneered.[5] To address EP's shortcomings in this regard, Erwin approached Greenfield to ascertain whether he would be willing to work with EP. At the time, Greenfield responded positively to Erwin's overtures, and said to him that he was looking for opportunities to create innovative campaigns and marketing plans involving branded entertainment and other cutting-edge techniques which could be "owned" by the creators and sponsors thereof. To gain Greenfield's assent to a working relationship with EP, Erwin offered to join with Greenfield in a joint venture or partnership to create and implement marketing plans and campaigns by which to secure new business, the fruits of which they agreed to share.[6] No more than a month passed before they were working together to create *Amazing Grace*,[7] the forerunner to *HSTS*.

About this time, Verizon Wireless (hereinafter "VZW") was coming to the stark realization that its marketing efforts directed to the increasingly-affluent African American (hereinafter "AA") community were failing, and that VZW was missing out on a great opportunity to increase market share through increasing its sales to the AA demographic group.[8]

As events transpired over the next twenty months or so from October 2005, through the creative genius manifested in *How Sweet the Sound*, Greenfield satisfied the aforesaid needs of both EP and VZW, only to be spurned by the very parties who have benefitted so greatly from Greenfield's brilliance and hard work, i.e. VZW, EP and Joseph A. Erwin.

Erwin has predicated his defense on three pillars, all of which have crumbled under the weight of the facts, and the obvious fallacies in the arguments themselves. The first pillar is

---

[5] **Ex. 5**: Joe Erwin e-mail to Jeff Greenfield: "I don't know what we might be able to do to help one another, but your area of expertise might give us a competitive advantage in the pitch (not to mention a new marketing tool for these folks)" (Oct. 24, 2005).
[6] **Ex. 6**: Greenfield Dep. (Oct. 21, 2009) at pp. 104–106.
[7] **Ex. 7**: E-mail re: *Amazing Grace* (Nov. 4, 2005) and attached *Amazing Grace* Deck (Nov. 4, 2005).
[8] **Ex. 8**: African-American Media Review (Jun. 2005) (VZW000083921), showing VZW's then-current marketing to African Americans, with lagging results.

Erwin's *ad hominem* attack. Erwin's brief makes much of the utterly immaterial facts that (1) third-party defendant Joseph A. Erwin has served as Chair of the South Carolina Democratic Party, and (2) that before launching his career in branded entertainment more than a decade ago, counterclaimant Jeffrey Greenfield committed serious errors of judgment that led him to plead guilty to charges of mail fraud. From these two facts, EP implies that Erwin's alleged egregious conduct cannot be true as against Greenfield, and that, therefore, EP should be granted summary judgment because Joe Erwin and EP are "good" and Jeffrey Greenfield is "bad." History shows, however, that those in high positions of public trust such as Erwin, Clinton, Edwards, and Sanford are subject to the same laws as those who may have *previously* committed a crime, and that those who previously served time have enforceable legal rights like everyone else.[9]

Erwin's second defensive pillar is built on the consistent mischaracterization that EP seeks to make true through repetition, i.e. that Jeffrey Greenfield's role in creating *HSTS*, and his expected participation in its implementation, was somehow expressly or impliedly limited to producing the only facet of the Marketing Campaign that has not yet been implemented in its totality: production of a reality television *series*. The testimony, documents, and experts have lent minimal support to this reddest of herrings; nevertheless, it remains the jury's role to assign this baseless claim the weight it deserves.

Erwin's third defensive pillar is based on another gem of legal mischaracterization: the notion that EP and Greenfield, together, produced nothing of value between October 21, 2005 and June 19, 2006, as purportedly shown by the fact that VZW had not begun committing dollars to the project. From VZW's delay in funding the project, EP concludes that Greenfield's contributions during the eight-month joint development period can be reduced to a "mere

---

[9] We note, in passing, that the theft of trade secrets carries serious criminal penalties in South Carolina. S.C. Code Ann. 39-8-90.

expectancy" of future compensation, while EP and VZW have made documented gains in market share among the African Americans that the HSTS campaign targeted, and while EP has enjoyed additional business opportunities flowing from the awards, trademarks, and revenues it has claimed as its own.

<u>Response to Erwin's "Statement of Undisputed Facts"</u>

Erwin and EP base their motion(s) upon their <u>Statement of Undisputed Facts</u> which amounts to an argument chock-full of controversial facts, incomplete and self-serving representations, gratuitous character insinuations, and irrelevant puffery, all as shown below.

1. In its *Statement of Undisputed Facts,* at 4, EP claims to be a "full-service … marketing agency … including branded entertainment …", the implication being that EP would therefore have no need of Greenfield's expertise in branded entertainment. But in his deposition, Allen Bosworth stated that he did not know what "branded entertainment" is, even while simultaneously denying that Greenfield was an expert in it.[10]

2. In October 2005, EP did not have the skills that Greenfield had in branded entertainment and other such innovative marketing techniques,[11] and it is for this reason that Erwin induced Greenfield to partner with EP to secure new business, e.g. in response to Greenfield's statement to him on October 24, 2005 that "… I'm glad I got you all worked up about incorporating 'branded entertainment' into your upcoming pitch. Let me know how your meeting today went and what I can do to close the client", Erwin said "… your area of expertise

---

[10] **Ex. 9**: Bosworth Dep. (Nov. 23, 2009), at p. 67.
[11] **Ex. 10**: EP presentation to Captain D's showing branded entertainment marked with an asterisk, and described as "specialized services on which we could partner with our Boston or New York offices as needed"; (Gf./1st 000680) *compare* **Ex. 11**: Shannon Wilbanks, Notes of EP-Greenfield conference call, as distributed to EP management group (Oct. 27, 2005): "Shannon (to) get copies of Jeff's handout to everyone ... *Focus on Greenfield's doc for additional ideas*." (EP000573)

might give us a competitive advantage in the pitch (not to mention a new marketing tool for these folks)."[12]

3. The aforesaid pitch referenced by Erwin was the <u>Amazing Grace</u> pitch developed by Greenfield for presentation to Captain D's, in regards to which Erwin's belief that Greenfield could add significant value is shown by the voice mail which Erwin left for Greenfield on November 28, 2005 in which he said that - while they had not won the account - Captain D's approach was: "… more fast-food type advertising, and <u>we were going for something authentic and such, your part of the work that you helped us with</u>. They loved that part by the way, and we may yet call on them again."[13]

4. From this positive feedback from Captain D's, and from their close working relationship over many months, EP and Erwin learned that Greenfield is a brilliant, creative thinker who has received a great deal of national recognition for his innovative work in marketing.[14] Moreover, they know that the campaign he masterminded, *HSTS*, won an Effie Award, the most prestigious award in the advertising world.[15]

6. In EP and Erwin's *Statement of Undisputed Facts*, at 6, EP and Erwin claim that they developed a marketing idea involving gospel choirs and yet, EP makes no mention of Greenfield's role in the origination and development of the idea. EP's claim of sole-authorship of *HSTS* is contradicted by numerous documents and testimony in the case.[16] Moreover, in the

---

[12] **Ex. 12**: E-mail exchange between Jeff Greenfield and Joe Erwin (Oct. 24, 2005), aka Def.'s Ex. 48 to Erwin Dep. (Gf./1st000618-619).
[13] **Ex. 19**: Tr. of Erwin voice message (Nov. 28, 2005) as played at Erwin Dep. 53:18–55:18. Erwin's reference to "something authentic … your part of the work" pertains to Greenfield's gospel choir competition concept, which Erwin expects to be perceived as "authentic" by the intended African-American audience.
[14] **Ex. 15**: Susan M. Fournier, Expert Witness Report, at pp. 3-12.
[15] **Ex. 1**: Effie 2009 Trophy Winners.
[16] **Ex. 16**: Bill Reynolds Dep. (Nov. 11, 2009), at 29: "We had a discussion about who Captain D's was trying to reach and how we might impact them, and the idea developed in the course of that conversation. Who said it first, I have no idea; **Ex. 7**: E-mail re: *Amazing Grace* (Nov. 4, 2005) and Greenfield's attached *Amazing Grace* Deck (Nov. 4, 2005); **Ex. 2**: *HSTS* Presentation Deck (Apr. 26, 2006), at p. 8, and p. 36 (last page); and **Ex. 17**: E-mail

category of irrelevant puffery, EP and Erwin claim in their brief that Erwin originated the idea of marketing to this community through church choirs based upon his involvement with African American churches as head of the South Carolina Democratic Party. Armed with numerous documents, voice mails and emails from Erwin himself, Greenfield disputes Erwin's claim of authorship, and it is difficult to see how Mr. Erwin's political activities are relevant to the motion for a summary judgment.

    7.  Following Greenfield's offer to Erwin to assist EP in helping to "close the client" on October 24, 2005,[17] Greenfield was invited to join a conference call on October 25, 2005 with EP employees to begin the creative process of developing the campaign to pitch to Captain D's. In an attempt to minimize Greenfield's role in the call and in developing the creative content of the *Amazing Grace* pitch, EP and Erwin say in their *Statement of Undisputed Facts* at 7, that "Greenfield participated in a brief brainstorming conference call with Mr. Erwin and several Erwin-Penland employees," implying that was the extent of his contribution.  Two days following that call, (October 27, 2005) notes taken during the Thursday Captain D's Meeting[18] indicate that Greenfield made a contribution as to brand placement ("BR [Bill Reynolds] re Jeff Greenfield call/brand placement"); that Greenfield's presentation materials from the Los Angeles conference (where Erwin first approached Greenfield) were distributed; and that the working group would focus on "Greenfield's doc for additional ideas."

    8.  EP and Erwin say in their *Statement of Undisputed Facts* at 7, that "Greenfield later sent Erwin-Penland several emails and documents, all of which were related to ideas on how to

---

from Joe Erwin to Allen Bosworth (May 9, 2007):  "I think we should talk about it, and likely then call Jeff. This is about 50% his idea and he comes from a world in which "intellectual property" is a very big thing."

[17] **Ex. 5**: Jeff Greenfield e-mail to Joe Erwin (Oct. 24, 2005): "I'm glad I got you all worked up about incorporating 'branded entertainment' into your upcoming pitch. Let me know how your meeting today went and what I can do to close the client."

[18] **Ex. 11**: Shannon Wilbanks, Notes of EP-Greenfield conference call, as distributed to EP management group (Nov. 27, 2005).

develop the gospel competition concept into an "American Idol" style, branded reality television series." This "fact" is simply not true as the broad scope of Greenfield's contribution may be seen by the sample of documents and emails attached as Exhibits hereto.[19]

9. In an extraordinary footnote buried in its *Statement of Undisputed Facts*, at 7, EP and Erwin say that they <u>disagree</u> with Greenfield's factual claim to have come up with the idea for a church choir competition, but they go on to argue that it is "irrelevant" who came up with the idea. Obviously, this is an acknowledgment from EP and Erwin of the existence of a material factual dispute which would bear heavily upon the Motion for Summary Judgment, but it is also a surprising legal argument to advance when it is clear under the law that who came up with the idea, and who developed the marketing campaign is relevant to numerous claims which Greenfield has asserted against EP, VZW and Erwin, and which EP and Erwin seek to dismiss in their motion. Greenfield would suggest that the aforesaid admission of fact, coupled with the legal argument, is a tactical admission by EP and Erwin to allow for the fact that Greenfield has discovered the email which Erwin sent to his partner, Allen Bosworth, on May 9, 2007,[20] prior to the Memphis pilot.

10. EP and Erwin's *Statement of Undisputed Facts*, at 8, states as fact that no written contract or other agreement existed between Greenfield and Erwin-Penland. Whether there is an express or implied agreement is a central issue in the case which is discussed and documented fully below, and there is an abundance of evidence to support Greenfield's contention that he and EP had an agreement, or that an agreement can be implied. Greenfield's offer to help "close the client" cited above, combined with the subsequent invitation to join EP in developing the

---

[19] **Ex. 18**: Greenfield & 1st Approach, Internet Buzz Campaign Presentation (EP000035-EP000056); Greenfield & 1st Approach, Product Placement Presentation (EP000362-EP000368), Greenfield & 1st Approach, Radio Product Placement Presentation (EP000057-EP000075).

[20] **Ex. 17**: E-mail from Joe Erwin to Allen Bosworth (May 9, 2007).

<u>Amazing Grace</u> pitch clearly amount to Offer and Acceptance, the Consideration for which is seen in Greenfield's significant contributions to the creation and development of the campaign. Moreover, the existence of an agreement is confirmed in numerous documents in this case. For example, Erwin left a voice mail for Greenfield on December 5, 2005,[21] in which he invited him to Greenville to meet VZW's head of interactive and online marketing. From the voice message, it is clear: a) that Erwin valued Greenfield's creativity; b) that Erwin wanted to "seed" his organization with Greenfield's creativity; and c) that Erwin was thinking about enlisting Greenfield to join with EP in creating and developing a campaign to pitch to VZW, as in "particularly one that might be interesting to you".

12. In response to Erwin's voice message, on December 9, 2005 Greenfield wrote a message back in which he quoted his fee for the presentation in Greenville, but said that the amount would be "credited back to you with our first deal".[22]

13. Greenfield's performance in reliance on the "deal" with EP referenced above is clearly seen in the dozens of emails exchanged between he and EP during the many months when he was working with EP to create, first, the *Amazing Grace* campaign, followed by the creation of the *HSTS* campaign, including but not limited to his registration of *HSTS* with the Writer's Guild of America in the name of himself and Erwin, jointly, and the "deck" which was presented by EP and Greenfield, jointly, to VZW,[23] in which, at page 36, the *HSTS* campaign is shown as copyrighted to EP and Greenfield, and in which, at page 8, the campaign is described as "a local marketing and television concept conceived by Erwin-Penland and 1st Approach."

14. In their *Statement of Undisputed Facts* at 11, EP and Erwin state that Verizon Wireless did not accept the aforesaid proposal submitted by EP and Greenfield, and from that

---

[21] **Ex. 19**: Tr. of Joe Erwin voice mail to Jeff Greenfield (Dec. 5, 2005), Erwin Dep. at 55:22 – 56:14.
[22] **Ex. 20**: Jeff Greenfield e-mail to Joe Erwin (Dec. 9, 2005) (Gf./1st 000423).
[23] **Ex. 21**: Presentation Deck (Apr. 26, 2006); and **Ex. 22**: Greenfield's registration with WGA (Feb. 15, 2006).

fact, EP would presumably argue that Greenfield's role in *HSTS* was thereby concluded with no duties owed to him by EP or Erwin. Greenfield disputes this factual allegation by pointing to the transcript of the recorded conference call which occurred on June 9, 2006 between he and EP's Erwin, Bosworth, Wilbanks and Mendelson which, beginning at line 35:13 of the transcript,[24] and in the context of the fact that VZW had requested changes to *HSTS*, Erwin is clearly seen to be seeking (and receiving) from Greenfield an affirmation of his agreement with EP.

15. Following the above-described discussion, and in further reliance upon his agreement with EP, Greenfield undertook a number of substantive tasks including the preparation of a revised cost analysis for *HSTS* which was incorporated into a revised presentation "deck" which was EP then sent to VZW.[25]

16. In its *Statement of Undisputed Facts* at 12, , EP states that Greenfield and his ideas were not involved in planning the first Memphis concert in 2007, nor was he involved in the *HSTS* concerts in 2008 and 2009. This factual allegation is contradicted by a careful review of the decks as they evolved over time, starting with Greenfield's undisputed contributions,[26] and by the fact that as late as March 10, 2008, VZW was still using – and distributing to third-party agencies – the April 26, 2006 "deck" which Greenfield prepared and presented to VZW at its corporate headquarters in NJ.[27] EP and Erwin's fraudulent denial of Greenfield's involvement is evident: Page 8 of the April 26, 2006 "deck" shown at Exhibit "B", in which Greenfield had been identified as the co-creator of *HSTS*, was deleted from this deck, although Greenfield's 1st

---

[24] **Ex. 19**: Tr. of Jeff Greenfield – EP conference call (Jun. 9, 2006), at 35:13 – 37:23.

[25] **Ex. 23**: Transmittal e-mail from Allen Bosworth [EP] to Suzy Deering [VZW]; Revised *HSTS* Deck (Jun. 19, 2006) (EP000620-EP000639). *See* **Ex. 48**: Bosworth emails with Greenfield.

[26] **Ex. 49.** Greenfield's comparison of decks.

[27] **Ex. 24**: Revised Deck (still bearing the EP/1st Approach presentation date of Apr. 26, 2006), as distributed within VZW on March 10, 2008 (VZW000007529-VZW000007558).

Approach copyright remained intact in that version of the deck that VZW distributed in March 2008.

## AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY

The South Carolina Supreme Court adopted the tort of aiding and abetting breach of fiduciary duty in <u>Future Group, II v. Nationsbank</u>, 324 S.C. 89, 478 S.E.2d 45, 50 (1996). The gravamen of the claim is the defendant's knowing participation in a fiduciary's breach. *Id.* at 50. The elements of the cause of action are: (1) breach of fiduciary duty owed to the plaintiff, (2) the actor's knowing participation in the breach, and (3) damages. *Id.*

In his <u>Third-Party Complaint</u>, Greenfield charged Joseph A. Erwin with aiding and abetting breach of fiduciary duty by providing substantial assistance to Verizon Wireless and Erwin-Penland in breaching the fiduciary duties owed by them to Greenfield,[28] by failing to inform VZW and EP of Mr. Erwin's express and implied promises that Erwin made on behalf of EP to Greenfield – i.e., that Greenfield would be compensated for VZW and EP's commercial use and exploitation of Greenfield's Trade Secrets and for Greenfield's substantial work in creating and developing the <u>How Sweet the Sound</u> campaign. The premise upon which this cause of action is based is that neither EP nor VZW would have breached their respective fiduciary duties owed to Greenfield <u>if</u> Erwin had made full disclosure to EP and VZW of the nature and scope of the obligation Erwin undertook when he induced Greenfield to collaborate with EP. Under the "but for" test by which substantial assistance is measured, but for Erwin's failure to make full disclosure to EP and VZW, the resulting breaches of fiduciary duty by EP and VZW would not have occurred.

---

[28] *See* <u>Defendants' Motion for Partial Summary Judgment and Memorandum of Law in Support as to Breach of Fiduciary Duty Claim.</u>

Summary judgment for Mr. Erwin would be appropriate only if, upon review of all discovery materials, affidavits, and other items of record, the Court finds no evidence to support any one of the three essential elements. If *some* evidence exists to support each element, the Court must determine whether *genuine* issues of material fact must be resolved by the jury. *See, e.g.*, Vortex Sports & Entertainment, Inc. v. Ware, 378 S.C. 197, 201, 662 S.E.2d 444 (S.C. 2008) (upholding trial court's denial of motion for directed verdict). The question of "substantial assistance" is a jury question and for this reason alone, the motion should be dismissed as to this claim.

### A.     EP and VZW Both Owed and Breached Fiduciary Duties to Greenfield.

In his dispositive motion, Greenfield submitted seven pages of undisputed facts supporting the existence of the fiduciary duty that EP owed to Greenfield as his business partner, co-venturer, and/or co-promoter of *HSTS*, and the co-owner of valuable intellectual property rights.[29] We incorporate those facts here. Greenfield's *Motion for Summary Judgment as to Breach of Fiduciary Duty* is predicated upon the existence of an express, oral, or *de facto* partnership. However, fiduciary duties also arise in the absence of a formal partnership, in any business or financial context where one party imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence. Brown v. Pearson, 326 S.C. 409, 483 S.E.2d 477, 484 (S.C. Ct. App. 1997); Consolidated Insured Benefits, Inc. v. Conseco Medical Ins. Co., 2006 U.S. Dist LEXIS 85755 (D. S.C. 2006) (unpublished opinion in which Judge Harwell found no fiduciary duty, but did find an affirmative duty of *disclosure* arising in that particular business

---

[29] *See* Greenfield's *Motion for Partial Summary Judgment and Memorandum of Law in Support as to Breach of Fiduciary Duty Claim* at 2-8. *See* also the factual allegations pertaining to Erwin in support of Greenfield's causes of action for Misappropriation of Trade Secret, Fraud, and Breach of Contract.

relationship).[30] Moreover, in South Carolina, co-promoters of a new entity are fiduciaries to each other, and to the entity they are seeking to create. Duncan v. Brookview House, Inc., 262 S.C. 449, 456, 205 S.E.2d 707, 710 (1974). In the present case, Greenfield and EP were co-promoters of a new entity for which both sought funding (from VZW). As co-promoters, in the earliest stages of the relationship, EP and Greenfield created valuable rights to trade secrets and other intellectual property rights embodied in the *HSTS* branded entertainment marketing plan. EP, having accepted dominion and control over those valuable property interests during the formative stages of *HSTS*, had a fiduciary duty to act in the best interest of its co-promoter, and in the best interest of the collaboration, and not in its own sole and exclusive interest.

The fiduciary duty that VZW owed to Greenfield arose from its actual knowledge acquired *at least* as early as April 26, 2006 that Greenfield was the co-creator of *HSTS*.[31] VZW then proceeded with EP, as co-promoter of *HSTS*, to the exclusion of Greenfield. The fiduciary duties owed by EP and VZW are in existence today by operation of law as EP and VZW continue to commercially exploit *HSTS* to their collective enrichment, and at Greenfield's expense.

**B.     Joseph A. Erwin Knowingly Participated in, and Provided Substantial Assistance to, Aid and Abet EP and VZW's Breach of Fiduciary Duty.**

In addition to failing to inform Verizon Wireless and Erwin-Penland of Mr. Erwin's express and implied promises on behalf of EP to Greenfield, as mentioned above, Erwin further aided and abetted the aforesaid breaches of fiduciary duty by failing to inform EP and VZW of the following facts: 1) Erwin personally "recruited" Greenfield to join forces with EP in October,

---

[30] **Ex. 17**: E-mail from Erwin to EP staff member ( May 9, 2007) in which Erwin stated that HSTS is 50% Greenfield's idea. **Ex. 41:** E-mail from Greenfield to Erwin ("Option 2: 50% ownership. They pay $ 12 million. All profits are split 50/50")**.**  The latter was then pitched to VZW.
[31] **Ex 2**: April 26, 2006 DECK Presented to VZW by Greenfield-EP (PAGE 8 and 36).

2005;[32] 2) Erwin personally participated in conference calls with Greenfield as to key strategic issues involving *Amazing Grace* and *HSTS* on October 25, 2005, November 1, 2005,[33] February 13, 2006[34], March 27, 2006,[35] April 25, 2006, and June 9, 2006;[36] 3) Erwin was explicitly reminded by EP's Ryan Alford that Greenfield still held intellectual property rights to *HSTS* in May of 2007 after VZW began funding *HSTS*.[37] In writing, Erwin acknowledged Greenfield's rights as "50%",[38] but never followed through on the commitment he made, and the duty to both VZW and Greenfield, to contact and involve Greenfield prior to the Memphis pilot, and when any of the key decisions were made as to protection and disposition of *HSTS* intellectual property, including domain name registrations, the license agreement with VZW, the registration of trademarks, the national campaign roll-out in 2008, and the like;[39] and 4) Erwin explicitly told Greenfield in July 2008 that there was "… no intention to leave you out (of *HSTS*)",[40] but in that conversation, Erwin intentionally mischaracterized Greenfield's role in *HSTS* as limited to television production,[41] which blatantly contradicts the agreement that EP and Greenfield made on June 9, 2006 to downsize the program per VZW's request.[42]

---

[32] **Ex. 5**: Erwin email to Greenfield, October 24, 2005: "I don't know what we might be able to do to help one another, but your area of expertise might give us a competitive advantage in the pitch (not to mention a new marketing tool for these folks)".
[33] **Ex. 25**: Wilbanks' email to Greenfield, November 1, 2005 (Greenfield: "Makes perfect sense. Very impressive numbers - especially when we double their business in the first 12 months!")
[34] **Ex. 26**: Wilbanks' notes of conference call of February 13, 2006 reflecting scope of Greenfield contribution.
[35] **Ex. 27**: Wilbanks' email to Greenfield per Erwin request, March 28, 2006, showing key points for VZW presentation per Greenfield contributions.
[36] **Ex. 19**: Transcript of Greenfield-EP conference call, June 9, 2006, Page 35, Ln 13 - Page 37, Ln 23.
[37] **Ex. 17**: Erwin email to Bosworth, May 9, 2007.
[38] **Ex. 17**: Erwin email to Bosworth, May 9, 2007.
[39] **Ex. 28**: Section 18, Greenfield Affidavit, March 1, 2010.
[40] **Ex. 19**: Transcript of Greenfield-EP conference call, June 9, 2006, Page 38, Ln 19.
[41] **Ex. 19**: Transcript of Greenfield-EP conference call, June 9, 2006, Page 48, Ln 19.
[42] **Ex. 19**: Transcript of Greenfield-EP conference call, June 9, 2006, Page 35, Ln 13-Page 37, Ln 23.

**C.     Erwin's Aiding and Abetting of EP and VZW's Breach is the proximate cause of damage to Greenfield.**

Greenfield's damages arising from EP and VZW's breach of fiduciary duty, aided and abetted by Erwin, have been thoroughly documented by Greenfield's economist, Oliver Wood.[43] So long as Greenfield demonstrably suffered *any* damages proximately caused by Erwin's aiding and abetting, he is entitled to submit the same to the jury.

### Conclusion

A wealth of credible evidence supports all three elements of Greenfield's Aiding and Abetting Breach of Fiduciary Duty cause of action against Erwin. Accordingly, Erwin's *Motion for Summary Judgment* should be denied.

**The Law Office of P. Jeffrey North LLC**

**By:     P. Jeffrey North, Esq.**

**Attorney Identification Number 9885
PO Box 7525
Hilton Head SC 29938
Phone (843) 341-5200
Fax     (888) 487-7624
Email   attorney@pjnorth.com**

**March 18, 2010
Hilton Head SC**

---

[43] **Ex. 29**: Prof. Oliver Wood's Supplemental Report, February 17, 2010.