UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| HILL HOLLIDAY CONNORS COSMOPULOS, INC., d/b/a ERWIN-PENLAND,<br><br>            Plaintiff,<br><br>     v.<br><br>JEFFREY GREENFIELD and 1st APPROACH, LLC,<br><br>            Defendants, and Third-Party Plaintiffs,<br><br>     v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, and JOSEPH A. ERWIN,<br><br>            Third-Party Defendants. | CIVIL ACTION NO. 6:08-3980-GRA<br><br>**Hon. G. Ross Anderson Jr.** |

**ERWIN-PENLAND'S OMNIMBUS REPLY TO
GREENFIELD'S MULTIPLE OPPOSITIONS TO SUMMARY JUDGMENT**

**SUPPLEMENTAL ARGUMENT IN REPLY**

Plaintiff Hill Holliday Connors Cosmopulos, Inc., d/b/a/ Erwin-Penland ("Erwin-Penland") and Third-Party Defendant Joseph A. Erwin (collectively, the "Moving Parties") hereby submit their joint and omnibus Reply to the Oppositions to summary judgment filed by defendants and counterclaim-plaintiffs 1st Approach, LLC and Jeffrey Greenfield (collectively, "Greenfield" or "Defendants").[1]  In the interest of conserving judicial resources and clarifying issues for the Court, the Moving Parties reply to the issues raised in Greenfield's multiple Oppositions in this omnibus Reply.

**INTRODUCTION**

In his Counterclaim and Third-Party Complaint, Greenfield uses the word "pitch" **ninety-three** times to describe the various events he claims serve as a basis for his trade-secret, breach of contract, unjust enrichment, and other counterclaims.  See generally Counterclaim (repeatedly referring to the speculative pitches to Captain D's and Verizon Wireless as "First Pitch" and "Second Pitch" respectively).  Merriam-Webster's Dictionary, Eleventh Edition defines "**pitch**" as follows:  "**…** to attempt to persuade especially with a sales pitch; **to present (a movie or program idea) for consideration (as by a TV producer).**"  Greenfield's Oppositions fail to either change the plain meaning of the word "pitch" or challenge the dispositive, undisputed, and incontrovertible truths that call for summary judgment:

---

[1]  Greenfield filed two different Oppositions to the Moving Parties' single Motion for Summary Judgment.  Greenfield also filed a separate Opposition against Verizon Wireless.  These three Oppositions come on the heels of Greenfield filing two *separate* Motions for Summary Judgment against Erwin-Penland.  Erwin-Penland filed an omnibus Opposition to Greenfield's multiple summary judgment motions, and files an omnibus Reply to Greenfield's multiple summary judgment oppositions.  Erwin-Penland respectfully submits that Greenfield's approach of filing separate and multiple summary judgment papers does not merit a similar response.

1

First, **Greenfield's entire role and interaction with Erwin-Penland**, *regardless of how Greenfield characterizes the scope of his role*, **was limited solely to the speculative pitches** presented to Captain D's and Verizon Wireless.

Second, Erwin-Penland has been **paid only for the actual work** it did in implementing and executing the How Sweet the Sound project, and Erwin-Penland has **never been paid for any** "creative genius" **ideas** that Greenfield claims he provided Erwin-Penland through the sharing of his alleged "trade secrets."

Third, the speculative pitches to Captain D's and Verizon Wireless for an "American Idol style competition" contained generalized marketing principles and *did not contain any unique "trade secrets"* that were not otherwise known or "readily ascertainable by proper means." Further, Greenfield admitted that all his alleged "trade secrets" were contained in the April 2006 pitch and **Greenfield shared this information with Verizon Wireless and other third parties without any confidentiality agreement**. This fact alone is fatal to his trade secrets claim.

Fourth, Greenfield admitted that he did **absolutely no work whatsoever in 2007, 2008, or 2009** on the How Sweet the Sound ("HSTS") project that was eventually accepted by Verizon Wireless and implemented and executed by Erwin-Penland and other vendors selected by Verizon.[2]

Nothing Greenfield has said in his Oppositions can challenge these basic truths (among the many other undisputed facts listed by Erwin-Penland in its Memorandum, with reference to the factual record). Greenfield ignores the **undisputed facts** put forth by Erwin-Penland in support of its motion – which are **based almost exclusively on Greenfield's own admissions** –

---

[2] It is important to remember that Verizon-Wireless had **no legal obligation** to select *any particular agency* (including Erwin-Penland) or select *any particular scope of work* to implement the How Sweet the Sound program that was *pitched* for its *consideration*.

2

and tries to focus the Court on immaterial facts, irrelevant arguments, and unsupported conclusions not based in law or fact. Greenfield raises many red herrings in his Oppositions, but these basic, incontrovertible facts are fatal to Greenfield's claims and dispositive of the issues.

At bottom, *any collaboration between Greenfield and Erwin-Penland was limited to the new business pitches, and any work Greenfield did as part of those pitches to obtain business was speculative in nature (as he admitted)*. There were no legally binding guarantees of receiving any work from those pitches; there were no contractual agreements setting up any payment schedules; and there were no partnership agreements setting up the sharing of profits and losses. And because all that Greenfield provided were general marketing principles readily ascertainable by those in the industry and not unique, unknown concepts, Greenfield's entire theory for relief falls upon itself. Summary judgment on all claims is appropriate.

## ARGUMENT

**I.     Greenfield's Factual Contradictions, Misstatements, and Embellishments Are Entitled to No Weight, and Greenfield's Own Admissions are Fatal to his Claims.**

In Erwin-Penland's Opposition to Greenfield's Motions for Summary Judgment (see Docket No. 134), Erwin-Penland provided examples of how Greenfield was willing to go to great lengths to embellish the factual record (going as far as to submit a sworn affidavit that was diametrically opposed to his prior deposition testimony). Greenfield's Oppositions provide more examples of the extent to which Greenfield will go to obfuscate the truth and manufacture immaterial factual disputes in the hope of surviving summary judgment. The Court should properly ignore these distortions of the record in deciding summary judgment. See, e.g., Barwick v. Celotex Corp., 736 F.2d 946, 959-60 (4th Cir. 1984); Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 975-76 (4th Cir. 1990).

Greenfield's Oppositions (much like Greenfield's Motions for Summary Judgment) put

3

the Moving Parties in the difficult position of either letting Greenfield's misstatements and mischaracterizations go unchallenged or risk suggesting the existence of factual disputes where no material dispute exists. The Moving Parties can only assume that Greenfield's aim is to try to entice the Moving Parties into countering each of his misstatements, distortions, and exaggerations in the hopes that this will create the appearance of factual disputes. The Moving Parties refuse to be led down that road, and instead simply point out a few examples of Greenfield's mischaracterizations but note that, importantly, no dispute is material to the elements of the legal claims he has brought.

As one example, Greenfield **internally contradicts himself in his own summary judgment Oppositions** against Verizon Wireless and Erwin-Penland, presumably hoping that the Court will either not notice these contradictions or that Greenfield will confuse the issues enough to suggest a dispute of fact worthy of a denial of summary judgment. (Compare, e.g., Gf. VZW Opp. at 8 (claiming that it was his "genius" idea to "select[] and identify[] this perfect branding opportunity for Verizon Wireless") with Gf. EP Opp. at 12 (claiming that he was not involved when the idea was first pitched to Verizon Wireless and that EP deceived him by taking the idea to Verizon without his knowledge))[3] As another example, Greenfield **characterizes some of the same facts as both "Disputed" and "Undisputed"** in his various papers. (Compare, e.g., Gf.

---

[3] The glaring internal contradictions aside, Greenfield's self-proclaimed "genius" had nothing to do with "identifying" this "perfect" opportunity for Verizon Wireless. It is undisputed that (i) The original How Sweet the Sound concept was not even created for Verizon Wireless, but rather, was pitched to Captain D's, *a fast-food, seafood restaurant chain* (EP SJ Ex. 1, Bos. Aff. ¶ 17); (ii) Erwin-Penland, not Greenfield, selected its longstanding client Verizon Wireless as a potential sponsor for the television show once Captain D's rejected the pitch (to hire Erwin-Penland as an agency of record), and at the time it occurred, Greenfield was not even aware that Erwin-Penland was floating the idea of pitching the HSTS concept to Verizon Wireless in December 2005 (id. ¶ 21; see Gf. Opp. to EP's Motion at 12); and (iii) unlike Erwin-Penland, Greenfield knew nothing about Verizon Wireless' existing business model or advertising needs. (EP SJ Ex. 36, Gf. Dep. 136:20-137:12).

4

Fid. Duty Mot. at 3, ¶ 3 (stating that it was *undisputed* that Greenfield expected to receive an ownership interest in any property created as a precondition to working with Erwin-Penland) with Gf. EP Opp. at 3, ¶ 2 (stating that the very same fact is *disputed*))[4]

Further, in his summary judgment papers, Greenfield dramatically exaggerates his role in the two speculative pitches and completely contradicts what he said in his deposition about his role. (Compare, e.g., Gf. Aff. in Support, ¶ 12 ("At the pitch, I was the lead spokesman on a number of key sections of the "How Sweet the Sound" presentation to Verizon Wireless…") with (EP SJ Ex. 34, Gf. Dep. 168:23-24) ("I'll be completely honest. I don't even recall the pitch in terms of who said what….") and (EP SJ Ex. 34, Gf. Dep. 165:11:19) (admitting that he probably spoke for less than 5 minutes of the one and a half hour presentation).

Greenfield makes many exaggerated claims aimed at leaving the Court with the mistaken impression that he spent long months working hard on the HSTS pitch. (See, e.g., Gf. EP Opp. at 12 ("Greenfield spent eight months molding and shaping *HSTS* into the award-winning marketing plan it became.")) This is simply misleading. Greenfield testified at his deposition that he had less than *ten* calls about the HSTS pitch in total, and he only recalled the substance of only *four* of those calls. (See, e.g., Ex. 3, Gf. Dep. 109:17-24, 132:1-15, 156:14-157:3, 159:1-24, 183:1-23) Importantly, Greenfield's own "activities" record belies any suggestion that Greenfield spent more than a *de minimis* amount of time working on the proposed advertising pitch. (See EP SJ Ex. 19) His own time records span no more than a page and a half and show

---

[4] Once again, the internal contradictions in his own papers aside, *neither* of these assertions is actually supported by the record. The only undisputed fact is that Greenfield's participation in the pitch had no preconditions and Greenfield was willing to do whatever it took to have Verizon Wireless accept the proposal that involved him. (See Ex. 27 to Gf. Unjust Enrichment Motion at 000203 (email from Greenfield stating "I was thinking of several different directions" and further stating that "All I want is for this deal to close -- whatever it takes!") (emphasis added)).

5

entries on only eight days during the entire stretch — and that *includes* dates where he "[wrote] up details for the TV show," and *includes* the dates where he had the calls with Erwin-Penland to discuss the pitch.[5] (Id.)  This despite the fact that it was Greenfield's "practice to take notes on phone calls" and he "was pretty diligent with it." (EP SJ Ex. 3, Gf. Dep. 133:15-134:1). Regardless of how many hours he spent on the pitch, however, the final end-product of their collaboration speaks for itself:  Erwin-Penland presented Verizon Wireless with a thirty-five slide presentation deck to which Greenfield contributed but three slides.  (EP SJ Ex. 3, Gf. Dep. 184:17-20; EP SJ Exs. 22 (attaching Greenfield's slides))  It is undisputed that Erwin-Penland drafted all other aspects of the proposal.  (See EP SJ Ex. 22; EP SJ Ex. 3, Gf. Dep. 187:24-188:4)  Any insinuation that Greenfield spent eight months crafting the purportedly "brilliant" HSTS pitch materials is simply contradicted by the record.

     Importantly, however, these mischaracterizations (while frustrating) are immaterial to any element of the legal claims at issue.  It is undisputed that Greenfield understood that he was working on a speculative business pitch with no guaranteed compensation or future business. (EP SJ Ex. 3, Gf. Dep., 203:12-20 ("Q.  You understood that it was a pitch to get business, right? A.  Yes. Q.  That, if you didn't get the business, then you wouldn't have the work, right? A. That's correct, yes)  The fact is that Greenfield  knew that this was a *speculative pitch* for which no compensation was requested or expected, and from which no guarantees of future work were

---

[5]    These notes also refute Greenfield's claims that this was not a TV show concept when Erwin-Penland originally pitched it to Verizon Wireless. See id. (listing Greenfield's "Activities" as "write up details for the TV show," "call about Deck & Show," "call about Verizon TV show," "call with Joe and Allen about Verizon show," and "call with Joe & Allen regarding the Verizon Show").  While Greenfield tried to distance himself from the time records by saying that on some occasions he did not have entries, he also admitted that "some of [the entries] were days that [he] didn't do anything on the project." (EP SJ Ex. 36, Gf. Dep. 150:15-22)  Moreover, what he did for the pitches amounts to a handful of emails and phone calls.

6

made.[6]

By contrast, the Moving Parties' request for summary judgment relies almost entirely on Greenfield's own admissions in this case. The Moving Parties' Memorandum contained over **one hundred citations** to Greenfield's **own deposition testimony**. Greenfield's testimony, by itself, is fatal to each of Greenfield's Counterclaims. The Fourth Circuit in Rohrbough v. Wyeth Laboratories, Inc. cautioned that "sham issues of fact" are created when affidavit testimony (or here mere unsubstantiated commentary in a legal brief) contradicts deposition testimony. 916 F.2d 970, 975-76 (4th Cir. 1990).[7] This is precisely what Greenfield offers here. We urge the Court to do what the Moving Parties have done: that is, rely on Greenfield's clear admissions under oath at his deposition in determining the undisputed facts. The other evidence relied upon by the Moving Parties simply buttresses Greenfield's own admissions. Greenfield's purported disputed facts are immaterial to the elements of his claims, and thus, for purposes of summary judgment, cannot save his claims as a matter of law.

## II.     Greenfield's Trade Secret Claims Fail as a Matter of Law.

In his Opposition to Erwin-Penland's Motion, Greenfield relegates discussion of trade secrets to one short paragraph on the last page of his brief. (Gf. EP Opp. at 15) This is

---

[6] Expert opinions only confirm these basic truths about industry practice. See, e.g., EP SJ Ex. 16, Sealey Expert Report at 8 ("In both [pitches], compensation would occur only if they decided to go forward with the project and retained Erwin Penland and Greenfield to manage the project."); EP SJ Ex. 17, Agate Expert Report at 5-6 ("[T]he industry standard (and the standard that was in place in 2005 and 2006) is that such pitches are speculative pitches that do not come with any guarantee for future payment and do not endow agencies or vendors with any creative rights in subsequent projects."); EP SJ Ex. 27, Burns Expert Report at 9 ("To the extent that Greenfield had discussions and offered some slides for inclusion in the presentations by EP, such efforts can only be considered speculative (or 'spec') work."). These opinions are unrefuted by Greenfield.

[7] See also Barwick v. Celotex Corp., 736 F.2d 946, 959-60 (4th Cir. 1984) (finding that when the "content of the affidavit is conclusory, it does not set forth facts of which the plaintiff has personal knowledge and it does not give specific facts, but only generalities," it does not "measure up to the requirements of Rule 56(e)").

7

remarkable given the fact that the existence (or lack thereof) of trade secrets is the key question before this Court. (Cf. Greenfield's Counterclaim and Third-Party Complaint (containing **sixty** different mentions of "trade secrets" and using the existence of trade secrets as a fundamental component of **every single** claim at issue)) Neither the individual elements at issue nor the combination of the same constitute trade secrets under South Carolina law. See S.C. Code Ann. § 39-8-20(5). As demonstrated in the Moving Parties' Memorandum, given that there is no trade secret here, all claims flowing from the trade secret claim also fail. See, e.g., Murray v. NBC, Inc., 671 F.Supp. 236, 245 (S.D.N.Y. 1987).

Greenfield's Opposition against Erwin-Penland did not respond to Erwin-Penland's numerous arguments regarding the futility of Greenfield's trade secret claims, but he attempted to address the trade secret issue in his Opposition against Verizon Wireless. (See, e.g., Gf. VZW Opp. at 5-11) (arguing that his "brilliance," "creative genius," and specialized knowledge serve as a basis for his trade secret claims and claiming that the trade secrets consist of his "specific application of his unique and specialized marketing knowledge to the characteristics of the particular demographic that EP and VZW needed to reach.") Greenfield's arguments there are unavailing as well.

Greenfield cannot defend the indefensible — that the very concept of integrated marketing campaigns that combine television, internet, celebrities, buzz marketing, and the like (*advertising strategies that have existed for years and are familiar to even most casual television viewers*) are Greenfield's sole, protectable "trade secrets". (See, e.g., EP SJ Ex. 3, Gf. Dep. 62:12-64:9, 82:22-83:5, 85:1-3) (cited and discussed throughout the Moving Parties' Memorandum). His argument is untenable given his own testimony. Nor can Greenfield explain away the fact that Greenfield and Erwin-Penland were both aware of similar programs *relating to*

8

*church choirs* even *before* the pitch to Verizon Wireless. (See, e.g., EP SJ Ex. 3, Gf. Dep. 84:3-25; EP SJ Ex. 30). Thus, there was nothing new or novel, let alone secret, in these pitches.

Greenfield's entire trade secret theory ignores the statutory definition of trade secret: something that "(i) derives independent economic value, actual or potential, from <u>not being generally known to, and not being readily ascertainable by proper means by the public or any other person</u> who can obtain economic value from its disclosure or use, and (ii) is the <u>subject of efforts that are reasonable under the circumstances to maintain its secrecy</u>." S.C. Code Ann. § 39-8-20(5) (emphasis added). The concepts Greenfield is trying to claim as his "trade secrets" are all either generally known or readily ascertainable by proper means.[8] As Verizon Wireless pointed out in its Summary Judgment Motion against Greenfield, HSTS is similar to McDonald's Gospel Fest, a program in its *twenty-seventh season*. (VZW Mot. at 15 (and exhibits cited therein)) Like HSTS, Gospel Fest is a national gospel choir competition with local events, and McDonald's Marketing Director cites Gospel Fest as an example of how McDonald's is "deeply rooted in the African American community." (Id.)

Grasping for legal support for his claims, Greenfield relies on a few inapposite cases for the unremarkable position that trade secret protection can extend to marketing plans.[9] The mere

---

[8] See, e.g., EP SJ Ex. 29 at B6 (noting that American Idol, which incorporates the same concepts, is the "most popular television show in the United States"); EP SJ Ex. 17 at 7 (Expert Report of Michael Agate, who has over four decades of experience in the marketing industry) ("The 'marketing system' that Greenfield claims as his 'Trade Secret' is anything but unique and is one that is used around the country"); see also EP SJ Ex. 16, (Expert Report of Dr. Peter Sealey, whose four decade long career in marketing including as the Chief Marketing Officer of the Coca-Cola Company and President of Marketing at Columbia Pictures) (stating how these concepts are generally known and used throughout the industry); EP SJ Ex. 27 at 2-5 (Expert Report of Prof. Neal Burns) (discussing in detail how "none of the marketing techniques and tactics that Greenfield asserts as his trade secrets are novel or unknown.").

[9] Cf. All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So. 2d 363 (Fla. 5th Dist. 1999) (a Florida state court case involving a well-protected "written proposal" containing "detailed

9

fact that *some* marketing plans are protected does not mean that the general marketing concepts pitched *in this case* were a "trade secret" under South Carolina law.  Unlike those cases, at issue here are nothing more than generalized marketing concepts contained in a 35-slide presentation for a new business pitch.  (See EP SJ Ex. 23)  On its face, the presentation deck is a very general, preliminary overview of who the parties are and the general overview of HSTS, and Greenfield wrote only three of the slides for this overview deck.  (Ex. 3, Gf. Dep. 184:17-20; Ex. 22, email attaching Greenfield's slides.)

Lastly, even assuming some trade secrets existed here – which they do not – Greenfield shared his alleged trade secrets without any protection, and, thus, waived any claim that may have existed.  Greenfield took no measures to protect his purported trade secrets and freely shared them with Erwin-Penland, Verizon Wireless and other third parties without a confidentiality agreement.  (EP SJ Ex. 3, Gf. Dep. 82:22-83:5, 116:3-119:6, 166:1-168:2) Greenfield claims, the very core of the program was his alleged trade secrets and yet he admitted that they were contained in the presentation deck.  (EP SJ Ex. 3, Gf. Dep. 65:16-19, 82:22-83:5).  Finally, Greenfield's trade secret theory cannot be reconciled with the fact that he *publicly* filed that same presentation deck as Exhibit A to his original Counterclaim.  Accordingly, Greenfield cannot survive summary judgment on his trade secret claims.

### III.   Greenfield's Contract Claims Fail as a Matter of Law.

Greenfield's contract theory is a corollary of the argument Greenfield advanced recently

---

business plans" and architectural models and sketches that was allegedly misappropriated); Woven Electronics Corp. v. Advance Group, Inc., 1991 WL 54118 (4th Cir. 1991) (a pre-UTSA and pre-SCTSA case where a competitor misappropriated a unique, technical manufacturing process for woven wire cables for military use); Wilkes v. Pioneer Am. Ins. Co., 383 F. Supp. 1135 (D. S.C. 1974) (a pre-UTSA and pre-SCTSA case where the trade secret at issue involved a unique process to overcome a perceived legal prohibition to the sale of life insurance to federal employees).

in his Motion for Summary Judgment on the fiduciary duty claim. To summarize, Greenfield claims that *even though there was no formalized agreement whatsoever of any kind*, there was a "de facto" partnership and "implied contract" of some sort that grants Greenfield relief. For the reasons articulated in the Moving Parties' Memorandum for Summary Judgment (pp. 23-27) and the Moving Parties' Opposition to Greenfield's Motion for Summary Judgment (pp. 12-19), all such arguments fail as a matter of law. Greenfield's argument attempts to manufacture fact disputes that are not material. Regardless of what Greenfield claims, one-sided hopes cannot bind another party, even an implied contract requires agreement as to essential terms, and a contract is not complete where something remains to be done to establish contractual relations as contemplated by both parties. (See EP SJ Bf. at 23-26)[10]

## IV.     Greenfield's Fraud Claims Fail as a Matter of Law.

Having no response to Erwin-Penland's position that Greenfield's fraud claims fail as a matter of law (because he alleges no statement that was false at the time it was made, and because statements based on future events cannot sustain a fraud claim),[11] Greenfield attempts to advance an entirely new fraud theory in his Opposition – that Erwin-Penland intended from the very beginning of their interactions with Greenfield to squeeze Greenfield out of the HSTS project. This theory defies logic and contradicts the undisputed evidence in this case. It is

---

[10] Further, the Statute of Frauds (which Erwin-Penland pleaded as an affirmative defense) also bars Greenfield's implied contract claims. See S.C. Code § 32-3-10 ("No action shall be brought … (5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof … unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing."). There is no written contract of any kind, and it is unclear how the interaction between the parties in 2005 and 2006 could have implied a contract for the implementation of a program that was not tested until 2007 and not expanded until 2008 and 2009. For any number of reasons, Greenfield's contract claims fail as a matter of law.

[11] Greenfield concedes that "[m]isrepresentations must relate to a past or present fact." (Gf. EP Opp. at 11)

11

irrational to argue that Erwin-Penland would present Greenfield to Verizon Wireless – its long-standing client of over twenty years – as a television production person while simultaneously planning to defraud and discredit him.  Greenfield cannot and does not point to *any* evidence that even remotely suggests that Erwin-Penland intended to take advantage of Greenfield throughout the course of their dealings and risk its own credibility with one of its most important clients.

     To survive a motion for summary judgment, Greenfield must offer "clear and convincing" evidence that a genuine issue of material fact exists as to each element of fraud.  See, e.g., Cray Comm'ns, Inc. v. Novatel Comp. Sys., 33 F.3d 390, 394 (4th Cir. 1994).  Yet, Greenfield attempts to "prove" his new fraud theory in fewer than *two pages* of briefing *without any citation to the evidentiary record whatsoever*.  (Gf. EP Opp. at 11-13) (leading off with "each element of actual fraud finds factual support in the record," but not citing to any factual record in the two pages that follow).  Absent any proof, it is impossible for Greenfield's fraud claims to survive.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Cray, 33 F.3d at 394 (finding that the moving party was entitled to summary judgment in a case where the "[the opposing party's] legal memorandum devoted fewer than three pages to the fraud claim and did not refer the district court to any competent record evidence.  Thus, [the opposing party] failed to satisfy its burden of production under Rule 56…").  As in Cray, Greenfield cannot and has not offered any

12

evidence (let alone clear and convincing evidence) on each element of his fraud claims, and his claims, accordingly, must fail.

### V.    Greenfield's Trademark Cancellation Claim Fails as a Matter of Law.

As a matter of law, Greenfield cannot establish that Erwin-Penland *knew* that Greenfield had a superior claim to HSTS, let alone establish that Erwin-Penland knew that "the right to file a trademark registration for How Sweet the Sound belonged to Defendants exclusively." Cf. Counterclaim, ¶ 125. To this day, Greenfield is not using the mark in commerce; absent such use, he cannot claim trademark rights as a matter of law. See 15 U.S.C. § 1051(a)(3). The mere fact that litigation had commenced or Greenfield is claiming some joint rights in an idea does not negate Erwin-Penland's good faith belief that it was entitled to use the term as a trademark. McCarthy on Trademarks and Unfair Competition, § 31:76 (3rd ed. 1996) ("The oath is not a guarantee that no other firm has a legal right to use the mark. Simply because after litigation, another may succeed in proving in the PTO or in court that it does have a legal right to use, does not mean that the signer of the oath committed fraud and was a liar"). Greenfield cannot establish that Erwin-Penland's trademark registration was "fraudulent" and Greenfield's request to cancel the HSTS trademark must be denied as a matter of law.

### VI.   Greenfield's Breach of Fiduciary Duty Claim Fails as a Matter of Law.

For the reasons stated in the Moving Parties' Opposition to Greenfield's Fiduciary Duty Motion for Summary Judgment, Greenfield's claim that Mr. Erwin knowingly participated in a breach of fiduciary duty fails as a matter of law because there was no duty between Greenfield and Erwin-Penland. Erwin-Penland and Greenfield never entered into a fiduciary relationship or partnership, and there is no evidence that Erwin-Penland or Mr. Erwin was acting on Greenfield's behalf *in contrast to their own*. See, e.g., Williams-Garret v. Murphy, 106 F. Supp.2d 834, 841 (D. S.C. 2000). Further, the record is devoid of any evidence that Mr. Erwin

13

*knowingly* participated in a purported breach of fiduciary duty, and Greenfield's legal arguments are unavailing.

Greenfield argues that Mr. Erwin breached his duties by "failing to inform EP and VZW of the following facts: 1) Erwin personally "recruited" Greenfield to join forces with EP in October 2005; and 2) Erwin personally participated in conference calls with Greenfield…" These arguments are nonsensical. Even assuming some legal duty or partnership existed (which it did not), Erwin-Penland obviously knew of any such "facts," so there can be no fraud. Further, Greenfield *fails to provide legal support* for *why* a failure to inform Verizon Wireless of the specific dates of conference calls and similar facts was a breach of some legal duty.

Further, even putting aside Mr. Erwin's deposition testimony (see, e.g., EP Ex. 9, Erwin Dep. 124:6-9, 197:11-22, 213:6-24), Greenfield's *own admissions* demonstrate that Mr. Erwin believed in good faith that Greenfield's role was limited to television production. (See, e.g., EP SJ Ex. 24, email from Greenfield himself admitting: "1st Approach to handle all production and EP to handle all other marketing") (emphasis added)). In fact, the July 2008 conference call transcript Greenfield cites in his Opposition is all the proof needed to demonstrate Mr. Erwin's true intentions and good faith belief that Greenfield's role and expertise in HSTS was related to television production. In the middle of self-serving statements, Greenfied *himself* states: "I said to you guys, listen you guys can handle the local marketing and the event aspect of it. We'll handle the television aspect of it." (Ex. 19 to Gf. Erwin Opp.)[12] Greenfield may have hoped to

---

[12] Mr. Erwin contradicts many of Greenfield's claims on that call, for example, telling Greenfield: "I would take issue with what you said, the idea came from your office. The absolute idea for church-based choir came from my offices." Id. at p. 47. Other Erwin-Penland witnesses are consistent on this point. (EP SJ Ex. 9, Erwin. Dep 144:18-145:1; EP SJ Ex. 10, Wilbanks Dep. 41:20-42:16; EP SJ Ex. 11, Mendelsohn Dep. 11:14-15:17) Nonetheless, none of this is a material dispute for purposes of summary judgment.

14

manage the production of the television series, but even if this hope provided any guarantee (which it did not), no television series was ever created.

In addition, Greenfield's *own notes* confirm that Mr. Erwin called Greenfield to inform him of the 2007 How Sweet the Sound contest in Memphis. (See EP SJ Ex. 37, Greenfield's Notes on Erwin-Penland (referring to "Conference Call with Joe & Allen")) Mr. Erwin also claims that he informed Greenfield of the 2007 concert *before* the event, but regardless, Greenfield's notes from the undisputed call after the 2007 event are even more damning. In these notes, Greenfield summarizes the 2007 How Sweet the Sound concert that Mr. Erwin has described for him on the call, and notes, "Still no component for TV." (Id.) The implication is clear – Greenfield believes his own role to be limited to the TV production component. Most importantly, Greenfield did not claim that his trade secrets had been misappropriated or protest in any way. Greenfield instead waited until the hard work of others had made the program (different than the reality TV series he pitched) successful, and now seeks a windfall. There was no breach of fiduciary duty here, and Mr. Erwin did not knowingly participate in an intentional breach of any duty to Greenfield. Accordingly, summary judgment should enter for Mr. Erwin.

## CONCLUSION

For the foregoing reasons, and those contained in the Moving Parties' Memorandum, the Moving Parties are entitled to summary judgment on all claims in this litigation. Greenfield's trade secret, contract, and attendant claims fail as a matter of law.

Respectfully submitted,

HILL HOLLIDAY CONNORS
COSMOPULOS, INC. d/b/a ERWIN-
PENLAND, and JOSEPH A. ERWIN

By its attorneys,

*/s/ Bernie W. Ellis*
_____
Bernie W. Ellis, Federal No. 5650
Rita M. McKinney, Federal No. 4852
MCNAIR LAW FIRM, P.A.
Post Office Box 447
Greenville, SC 29602
Phone:   864-271-4940
Fax:        864-271-4015
Email:    bellis@mcnair.net
             rmckinney@mcnair.net

*Of Counsel*

Brenda R. Sharton
Neil T. Smith
Stacey Baron Ardini
Kunal Pasricha
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Phone:   617-570-1000
Fax:        617-523-1231
Email:    bsharton@goodwinprocter.com
             nsmith@goodwinprocter.com
             sardini@goodwinprocter.com
             kpasricha@goodwinprocter.com

Greenville, South Carolina
March 24, 2010

## APPENDIX A: LIST OF SUMMARY JUDGMENT EXHIBITS

### *EXHIBITS PREVIOUSLY ATTACHED*
### *TO ERWIN-PENLAND'S MOTION FOR SUMMARY JUDGMENT*

Exhibit 1, Affidavit of Allen Bosworth

Exhibit 2, Excerpts from the deposition of Allen Bosworth.

Exhibit 3, Excerpts from the deposition of Jeffrey Greenfield.

Exhibit 4, Judgment in United States v. Jeffrey B. Greenfield, No. 1:00cr10014, bates-labeled DC0001-DC0005.

Exhibit 5, Judgment in Blue Cross and Blue Shield of Mass. v. Mass. Rehabilitation Ass., Inc. et al., 1:97-CV-11929-MBB.

Exhibit 6, Excerpts from the deposition of Cheryl Davey.

Exhibit 7, Jeffrey Greenfield and Cheryl Davey's 2007 federal tax returns, bates-labeled Greenfield Taxes-000057-68.

Exhibit 7a, Jeffrey Greenfield and Cheryl Davey's 2008 federal tax returns, bates-labeled Greenfield-Davey 2008 Tax Returns000001-11.

Exhibit 8, Document titled "Top 100 Branded Entertainment Opportunities," bates-labeled EP000337-361.

Exhibit 9, Excerpts from the deposition of Joseph Erwin.

Exhibit 10, Excerpts from the deposition of Shannon Wilbanks.

Exhibit 11, Excerpts from the deposition of Andy Mendelsohn.

Exhibit 12, Excerpts from the deposition of William Reynolds.

Exhibit 13, Document titled "'Amazing Grace' Captain D's Branded Reality Show," bates-labeled Greenfield/1st Approach000652-671.

Exhibit 13a, Document titled "Product Placement/Hollywood Integration Proposal," bates-labeled Greenfield/1st Approach000741-751.

Exhibit 13b, Document titled "Internet Buzz Campaign," bates-labeled Greenfield/1stApproach000752-772.

Exhibit 13c, Document titled "Branded Entertainment Financing," bates-labeled EP000396-418.

Exhibit 14, Captain D's presentation deck.

Exhibit 15, Defendants' Responses to Erwin-Penland's First Set of Interrogatories, dated April 18, 2009.

Exhibit 16, Expert Report of Peter Sealey.

Exhibit 17, Expert Report of Michael G. Agate.

Exhibit 18, Document titled "Verizon Wireless Branded Entertainment Opportunity," dated December 29, 2005, bates-labeled EP000837-850.

Exhibit 19, Document containing Greenfield's "Activities," ranging from November 2, 2005 to June 9, 2006, bates-labeled Greenfield/1stApproach000870-871.

Exhibit 20, Defendant's Deposition Exhibit 27.

Exhibit 21, Emails exchanged between Messers. Erwin, Bosworth, Greenfield and Ms. Wilbanks, bates-labeled Greenfield/1st Approach000242-246.

Exhibit 22, Emails (with attachment) exchanged between Messers. Greenfield, Bosworth, Reynolds, Erwin, and Mendelsohn and Ms. Wilbanks, bates-labeled EP000460-464.

Exhibit 23, Docket Entry No. 21, Ex. A, Verizon Wireless Presentation.

Exhibit 24, Emails exchanged between Messers. Greenfield and Bosworth, bates-labeled Greenfield/1stApproach0000129-130.

Exhibit 25, Excerpts from the deposition of Suzy Deering.

Exhibit 26, Letter dated August 22, 2008 from Miles Feldman, Esq, to Erwin-Penland et al.

Exhibit 27, Expert Report of Neal Burns.

Exhibit 28, Wikipedia page for Clash of the Choirs, http://en.wikipedia.org/wiki/Clash_of_the_choirs (last visited February 26, 2010).

Exhibit 29, Brian Stelter, *'American Idol' Creator Plans Web Show*, N.Y. Times, Dec. 18, 2009.

Exhibit 30, Emails exchanged between Messers. Greenfield, Bosworth, Erwin and Hughes and Ms. Wilbanks.

Exhibit 31, Emails exchanged between Messers. Erwin and Bosworth, bates-labeled EP050532.

Exhibit 32, Excerpts from the deposition of Mark Hughes.

Exhibit 33, Unpublished cases cited in Erwin-Penland and Mr. Erwin's Memorandum of Law in Support of Their Summary Judgment.

### *EXHIBITS PREVIOUSLY ATTACHED TO ERWIN-PENLAND'S OPPOSITION TO GREENFIELD'S SUMMARY JUDGMENT MOTIONS*

Exhibit 34, Additional excerpts from the deposition of Jeffrey Greenfield.

Exhibit 35, Unpublished cases cited in Erwin-Penland's Omnibus Opposition to Greenfield's Motions for Summary Judgment.

### *ADDITIONAL EXHIBITS ATTACHED TO ERWIN-PENLAND'S REPLY TO GREENFIELD'S SUMMARY JUDGMENT OPPOSITIONS*

Exhibit 36, Additional excerpts from the deposition of Jeffrey Greenfield.

Exhibit 37, Greenfield's notes regarding interaction with Erwin-Penland.